[No. 3608–II.  Division Two.  December 10, 1980.]

EVERGREEN SCHOOL DISTRICT NO. 114, ET AL, *Appellants,* v. CLARK COUNTY COMMITTEE ON SCHOOL DISTRICT ORGANIZATION, ET AL, *Respondents.*

*John H. Binns, Jr.,* for appellants.

*James E. Carty, Prosecuting Attorney, Curtis Wyrick, Deputy,* and *Dennis R. Duggan,* for respondents.

PETRICH, J.—Plaintiff, Evergreen School District No. 114, has appealed the judgment of the Superior Court which affirmed the decision of the Clark County Committee on School District Organization not to transfer a parcel of real property from Vancouver School District No. 37 to plaintiff. We affirm the decision of the Superior Court.

On April 13, 1977, the Clark County Committee on School District Organization held a public hearing to consider a proposal to transfer a parcel of real property from

Vancouver School District No. 37 to Evergreen School District No. 114. The territory in question is zoned for commercial use and is the site on which a large shopping mall is to be constructed. Since the site is designated for commercial use, no school children reside within its boundaries. The County Committee heard much testimony for and against the proposal and received documentary evidence. Persons associated with Evergreen School District generally favored the transfer proposal because it would increase Evergreen's per–pupil valuation from approximately $35,200 to $40,600. Proponents argued that the transfer would reduce the present disparity of per–pupil valuation between the two districts whereas, if the parcel were retained by the Vancouver District, the per–pupil valuation disparity would increase. As such, they argued that the proposal presented an opportunity to equalize educational opportunity between the two districts without requiring a transfer of pupils between districts.

Representatives of Vancouver School District opposed the transfer because implementation would reduce their proposed per–pupil valuation which presently stood at slightly more than $59,000 and was anticipated to rise to approximately $62,650 upon completion of the shopping mall. They argued that Vancouver's per–pupil valuation, although higher than Evergreen's, was still less than the statewide average. Therefore, any attempt to equalize educational opportunity between the two districts by transferring the territory in question could have the effect of lowering the quality of education in Vancouver School District. The opponents also argued that Vancouver was relying upon the increase in tax base and projected rise in per–pupil valuation, and that the transfer would have an adverse impact on budget planning and bond ratings and could create uncertainty among business taxpayers in the area.

On May 11, 1977, the County Committee held a meeting to make a final decision on the transfer proposal. At this meeting committee members recited each of the factors

contained in RCW 28A.57.055 to be reviewed when proposed boundary changes between school districts are in question.[1] This statute requires that the county committee "shall give due consideration" to eight factors, summarized as follows, when school district boundaries are adjusted:

(a) equalization of educational opportunities of pupils and economies in administration;

(b) equalization of tax burdens;

(c) geographical features;

(d) convenience and welfare of pupils;

(e) improvement of educational opportunities through extension of school programs and resources;

(f) equalization of the cost of high school facilities;

(g) effective utilization of facilities, and

(h) other matters which in the judgment of the committee may be related to the equalization and improvement of facilities and to tax rates.

Evidence presented at the public hearing was considered in relation to each factor applicable to the proposed transfer. During this meeting, the committee members discussed the equalization of educational opportunities which could result from the proposed transfer as offset by the reduction of Vancouver's tax base. The committee also discussed the

---

[1]RCW 28A.57.055 reads in pertinent part:

"The county committee, in carrying out the purposes of RCW 28A.57.050, shall give due consideration in the preparation of plans and terms of adjustment as provided for therein (a) to equalization of the educational opportunities of pupils and to economies in the administration and operation of schools through the formation of larger units of administration and areas of attendance; (b) to equalization among school districts of the tax burden for general fund and capital purposes through a reduction in disparities in per–pupil valuation; (c) to geographical and other features, . . .; (d) to the convenience and welfare of pupils, . . .; (e) to improvement of the educational opportunities of pupils through improvement and extension of school programs and through better instruction facilities, . . .; (f) to equalization of the burden of financing the cost of high school facilities . . .; (g) to the future effective utilization of existing satisfactory school buildings, sites, and playfields; . . . and (h) to any other matters which in the judgment of the committee are related to or may operate to further equalization and improvement of school facilities and services, economies in operating and capital fund expenditures, and equalization among school districts of tax rates for school purposes."

potential adverse effect on Vancouver's bond rating and budget planning. A work sheet was prepared listing relevant information presented under the first two factors, equalization of educational opportunities and tax burdens, the only two factors really relevant to the proposed transfer. After this discussion, the committee voted 4 to 2 against the transfer.

Evergreen School District sought review of the County Committee's decision in Superior Court by mandamus on the basis that the hearings violated the appearance of fairness doctrine because a member of the Vancouver District School Board participated as a member of the County Committee. The Superior Court dismissed the mandamus action after finding that the County Committee had fulfilled its statutory duty and had considered the factors contained in RCW 28A.57.055. It also concluded that the actions of the County Committee were quasi–legislative in nature, and, therefore, that the appearance of fairness doctrine did not apply to its proceedings.

Evergreen School District raises two issues on appeal: (1) whether the Superior Court erred in dismissing the application for writ of mandamus; and (2) whether the Superior Court erred by concluding that the appearance of fairness did not apply to the County Committee's proceedings.

■ ■ A writ of mandamus may not be used to interfere with the discretionary action of an administrative tribunal unless that action is so arbitrary and capricious that it amounts to a total failure to exercise discretion. *E.g. Peterson v. Department of Ecology,* 92 Wn.2d 306, 314, 596 P.2d 285 (1979); *State ex rel. Klappsa v. Enumclaw,* 73 Wn.2d 451, 439 P.2d 246 (1968); *Miller v. Pacific County,* 9 Wn. App. 177, 509 P.2d 377 (1973). In such cases, mandamus may be used to compel the tribunal to exercise its discretion. *Klappsa v. Enumclaw, supra* at 453; *Miller v. Pacific County, supra* at 178. The action of a county committee in changing the boundaries of school districts within its jurisdiction pursuant to RCW 28A.57 is a discretionary one made after a consideration of the conflicting policies at

issue in each proposal. *Port Townsend School Dist. 50 v. Brouillet,* 21 Wn. App. 646, 650–52, 587 P.2d 555 (1978). Therefore, mandamus cannot issue in the present case unless the record shows that the County Committee completely disregarded the factors set forth by the legislature in RCW 28A.57.055 to guide the County Committee's exercise of its discretion.

A review of the record clearly shows that the County Committee considered all the guidelines contained in the statute, if they were applicable to the proposed transfer, before it voted to reject the proposal. Were we to accept Evergreen's argument that the writ of mandamus should issue, we would be announcing a rule that, where an inequity in per–pupil valuation exists between two school districts which can be narrowed by a transfer of territory from one district to the other, the County Committee has no discretion but must order adjustment of the boundaries of the two districts. We cannot superimpose this interpretation upon the statutory scheme set forth in RCW 28A.57, which clearly makes the decision to adjust the boundaries of school districts a discretionary one made after consideration of the relevant guidelines contained in RCW 28A.57-.055. We hold, therefore, that the Superior Court properly concluded that the County Committee's action in refusing to approve the transfer proposal was discretionary. Since the County Committee did comply with RCW 28A.57.055 and exercised its discretion, we hold that the Superior Court correctly refused to issue a writ of mandamus.

We next turn to whether the Superior Court erred in concluding that the appearance of fairness doctrine does not apply to proceedings before the County Committee. We hold that it does not and affirm the decision of the Superior Court.

■■ The appearance of fairness doctrine was developed to preserve the highest public confidence in governmental processes which bring about zoning changes or regulate land use. *Swift v. Island County,* 87 Wn.2d 348, 361, 552 P.2d 175 (1976); *Narrowsview Preservation Ass'n*

*v. Tacoma,* 84 Wn.2d 416, 420, 526 P.2d 897 (1974) (questioned on other grounds in *Norway Hill Preservation & Protection Ass'n v. King County Council,* 87 Wn.2d 267, 276 n.6, 552 P.2d 674 (1976)); *Smith v. Skagit County,* 75 Wn.2d 715, 453 P.2d 832 (1969). As the doctrine has evolved, it has been most often applied to administrative tribunals acting in a quasi–judicial capacity, whether they are adjudicating rights in zoning or other subject matters, as an extension of the due process requirement that judicial officers be free of any taint of bias. *Save a Valuable Environment v. Bothell,* 89 Wn.2d 862, 874, 576 P.2d 401 (1978); *Chicago, M., St. P. & Pac. R.R. v. State Human Rights Comm'n,* 87 Wn.2d 802, 807, 557 P.2d 307 (1976); *Buell v. Bremerton,* 80 Wn.2d 518, 524, 495 P.2d 1358 (1972); *Fleck v. King County,* 16 Wn. App. 668, 670–71, 558 P.2d 254 (1977). *See also Hill v. Department of Labor & Indus.,* 90 Wn.2d 276, 580 P.2d 636 (1978). Outside of the zoning and land use planning areas, the doctrine is not generally applied to administrative actions which are quasi-legislative in nature, *see Fleming v. Tacoma,* 81 Wn.2d 292, 296–98, 502 P.2d 327 (1972), and the doctrine does not apply unless a hearing is required by statute. *Polygon Corp. v. Seattle,* 90 Wn.2d 59, 578 P.2d 1309 (1978).

In the present case, we decline to apply the appearance of fairness doctrine to the County Committee's action in adjusting the boundary of school districts pursuant to RCW 28A.57.050, an action which is quasi–legislative in nature. It is well accepted that the strict procedural safeguards applied to insure fairness in quasi–judicial hearings which adjudicate individual rights do not apply to hearings which are quasi–legislative in nature. *Apostle v. Seattle,* 77 Wn.2d 59, 66, 459 P.2d 792 (1969). *See also Smith v. Skagit County, supra* at 740–42; B. Schwartz, *Administrative Law* § 70 (1976). Persons appearing before such tribunals have no right to insist that the decision rendered be based solely upon the record before the agency, and, like legislators, members of administrative tribunals exercising quasi–leg-

islative authority may base their decisions in part upon their own personal predilections and preconceptions.[2] *State ex rel. York v. Board of County Comm'rs,* 28 Wn.2d 891, 915, 184 P.2d 577, 172 A.L.R. 1001 (1947); *Smith v. Skagit County, supra* at 741. *See also* B. Schwartz, *supra* at § 60. In contrast to quasi–judicial administrative action, individuals affected by quasi–legislative administrative action are protected from arbitrary agency action not by elaborate procedural safeguards but by the standards delegated by the legislature to guide the agency's exercise of its discretion and ultimately by the political process. *State ex rel. York v. Board of County Comm'rs, supra* at 911.

The statutory scheme established by the legislature granting county committees authority to adjust the boundaries of school districts provides that the county committee shall be composed of registered voters residing in the county and shall be elected by the educational service district superintendent and by members of the board of directors of the county school districts. RCW 28A.57.030–.032.[3] Committee members are thus indirectly responsible to the voters residing in each school district by the voter's election of members of their local school boards. By nature of the statutory scheme which provides that members of the county committees shall be elected in part by local school

---

[2]The right of legislators to consider their personal predilections and preconceptions in carrying out their legislative duties of course does not mean that legislators may use their positions for personal gain. Legislators are required by the state constitution to disclose any private interest in pending legislation and to refrain from voting thereon. Const. art. 2, § 30.

[3]RCW 28A.57.032 provides in pertinent part:

"The members of the county committee shall be elected by the educational service district superintendent and the members of the board of directors of the school districts of the county at a meeting which the educational service district superintendent shall call for that and any additional purpose. At least one member of the county committee shall be elected from among the registered voters . . . of each class of school district (first or second class) in the county."

The only persons barred from serving on the County Committee are the educational service district superintendent and the school district employees. RCW 28A.57.031.

boards, committee members may well have certain preconceived opinions which may influence their consideration of proposals brought before them. However, as long as the county committee follows the statutory procedures set forth to guide the exercise of discretion, its hearings will be deemed fair. We hold that the presence of a representative of one of the school districts affected by the transfer proposal, something built into the very statutory scheme establishing county committees, does not invalidate the County Committee's ultimate decision. We decline, therefore, to apply the appearance of fairness doctrine to the exercise of the County Committee's discretionary authority to adjust school district boundaries pursuant to RCW 28A.57.

The judgment of the Superior Court dismissing Evergreen School District No. 114's application for writ of mandamus and upholding the decision of the Clark County Committee on School District Organization is affirmed.

PEARSON, A.C.J., and CALLOW, J., concur.