[No. 48189–0.   En Banc.   April 8, 1982.]

JAMES BARRIE, ET AL, *Appellants,* v. KITSAP COUNTY
BOUNDARY REVIEW BOARD, ET AL,
*Respondents.*

*Breskin, Robbins, Bastian & Cohen,* by *Derrill T. Bastian* and *Robert A. Terwilliger,* for appellants.

*Green, Roof & Krucker,* by *Jay B. Roof; Hillis, Phillips, Cairncross, Clark & Martin, P.S.,* by *Richard R. Wilson; Smith & O'Hare,* by *Thomas C. O'Hare; McCluskey, Pinckney, Sells, Ryan & Riehl, Inc., P.S.,* by *M. Karlynn Haberly,* for respondents.

DOLLIVER, J.—This is the third time these parties have been before this court on related issues. The previous cases

were *Barrie v. Kitsap Cy.*, 84 Wn.2d 579, 527 P.2d 1377 (1974) (*Barrie* I) and *Barrie v. Kitsap Cy.*, 93 Wn.2d 843, 613 P.2d 1148 (1980) (*Barrie* II). The underlying issue in all these cases is the rezoning of a tract of land in Kitsap County known as the Clares Marsh area. The purpose of the rezone is to allow the construction of a 400,000–square–foot shopping center on the property of respondents Ross. Plaintiffs allege the rezone and the construction of the regional shopping center will have severe negative effects on their land which is adjacent to the Ross property. The initial rezone action began in the early 1970's and the battle has been waged in the courts since 1973.

On July 10, 1980, this court handed down *Barrie* II. In ruling on the adequacy of the environmental impact statements (EIS) of Kitsap County and of the City of Bremerton, the court declared:

> We hold that the discussion of alternatives in the City's EIS is sufficient and adequate under the rule of reason. However, we find the County's EIS inadequate. It must be revised to include a discussion of alternative regional shopping center sites.

*Barrie,* at 857. The court further stated:

> We conclude that the discussion of socio–economic effects in the County EIS is inadequate. Even though the City's EIS is somewhat deficient in coverage of socio–economic effects and CBD [Central Business District] mitigation measures, we believe that it is sufficient. It is adequate under the rule of reason.
>
> We reverse the Superior Court's holding that the County's EIS is adequate and therefore declare the rezone ordinance invalid. The cause is remanded to the county commissioners for an EIS revision which should include a discussion of alternative shopping center sites and a more adequate discussion of the socio–economic impact of the project. We affirm the judgment of the Superior Court upholding the City of Bremerton's *pre-annexation comprehensive plan adoption and zoning for the Clares Marsh area.*

(Footnote omitted. Italics ours.) *Barrie,* at 860–61.

Following the determination in *Barrie* II, the Rosses

abandoned their plans to have the county rezone the property and on July 29, 1980, filed for the commencement of the actual annexation by the City. Both the Bremerton City Council and the Kitsap County Boundary Review Board (BRB) unanimously approved annexation. The BRB formally incorporated its approval in a resolution and decision signed May 11, 1981.

Plaintiffs appealed the decision of the BRB and the trial court entered judgment in favor of the Rosses, the BRB and the City of Bremerton. That decision is before this court on an accelerated review.

In *Barrie* II we held the EIS of the City of Bremerton for the Clares Marsh area was sufficient and adequate. That holding is affirmed. In 1976, the EIS of the City was fully valid and could have been relied upon by the BRB at that time. The only question now before this court is the validity of the 1976 EIS at the time of the BRB approval of the annexation on May 11, 1981. Plaintiffs contend the 1976 EIS of the City of Bremerton was in need of supplementation and that because it was not supplemented the action of the BRB in approving the annexation was arbitrary and capricious.

The test as to when an amended or new draft of an EIS must be prepared is set forth in WAC 197-10-495:

(1) A lead agency [in this case the City of Bremerton] shall prepare an amended or new draft EIS whenever it determines:
(a) That substantial changes have been made in the proposal, or significant new information concerning anticipated environmental impacts has become available subsequent to circulation of the initial draft EIS, and
(b) That circulation of a new draft EIS is necessary to provide further input and review on the proposal.
(2) In such event, the lead agency shall follow the provisions of WAC 197-10-450 through 197-10-490 for the amended or new draft EIS.

The record demonstrates no substantial changes have been made in the proposal for the annexation of the Clares Marsh property. Plaintiffs contend, however, that "signifi-

cant new information concerning anticipated environmental impacts has become available subsequent to the circulation of the initial draft EIS."

In a memorandum of January 7, 1981, to the Clares Marsh annexation file, Ken Attebery, planning director of the City of Bremerton and the responsible official (*see* WAC 197–10–040(30)), stated:

First of all, the proposal, annexation of the "Clares Marsh" area remains exactly the same today as was the case in 1976 and 1977 when the EIS for the annexation was filed.

Secondly, no significant new information concerning anticipated environmental impacts of the proposed annexation have become available to the City as lead agency subsequent to the circulation of the initial EIS.

It is therefore concluded that the December 1, 1976 EIS is adequate for the purposes of expressing the environmental impacts of the non–project action of annexation of the "Clares Marsh" area to the City of Bremerton.

■ The passage of time alone is not "significant new information" which requires a new or amended EIS. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Coun., Inc.,* 435 U.S. 519, 55 L. Ed. 2d 460, 98 S. Ct. 1197 (1978). Furthermore, it is not enough simply to claim the existence of "new information". *See Warm Springs Dam Task Force v. Gribble,* 431 F. Supp. 320 (N.D. Cal. 1977), *aff'd,* 621 F.2d 1017 (9th Cir. 1980). The lead agency must determine whether the "new information" is "significant". In *National Indian Youth Coun. v. Andrus,* 501 F. Supp. 649 (D.N.M. 1980), in addressing the question of what constituted "significant" new information, the court observed,

Any project, although it may undergo no "change" during its evolution, will, undoubtedly, generate "information" as it progresses. This new regulatory provision must be considered contemporaneously with NEPA's mandate as enforced through the EIS record. This means that in order for "new circumstances or information" to attain the status of "significant" these must reach that level

where, reasonably, it becomes necessary to focus attention once more upon the environmental aspects of a project. That is, a "hard look" must again be taken in the light of the "new circumstances or information." An otherwise unguarded reading of this subpart could unleash a procedural plague repeatedly impairing worthwhile projects even though there might be environmental data sufficient for the "hard look."

(Citation omitted.) *National Indian Youth Coun.*, at 663–64.

The "new information" which occurred since 1976 brought to the record by plaintiffs is (1) the Winmar Project, a major shopping center being constructed at Silverdale, and (2) the announcement of the intent of Sutter Hill, a national shopping center developer, to develop a regional retail shopping center in the Bremerton central business district. Acting under its authority as the lead agency, the City of Bremerton, through its responsible officer, the planning director, determined this new information was not significant. This opinion was concurred in unanimously by the Bremerton City Council and by the BRB in affirming the annexation of the property.

The determination that there was no significant new information is entitled to substantial weight. RCW 43.21C-.090. The action of a BRB may be reversed only when the reviewing court finds the agency action is "arbitrary or capricious." RCW 36.93.160(6)(f). Agency action is "arbitrary or capricious" if there is no support in the record for the action. *Hayes v. Yount*, 87 Wn.2d 280, 286, 552 P.2d 1038 (1976). As noted previously, we held in *Barrie* II that the EIS of the City was adequate in its coverage of socioeconomic effects and central business district mitigation measures. Based on our review of the entire record before the Kitsap County Boundary Review Board, which included our holding in *Barrie* II, we conclude the approval of the Clares Marsh annexation was not arbitrary and capricious.

This, of course, does not preclude postannexation examination of a particular project on the Clares Marsh property.

As stated by the Bremerton planning director in his memorandum of January 7, 1981:

> The impacts of any specific project which may be undertaken within the annexation area in the future will be analyzed through implementation of the State Environmental Policy Act policies and guidelines at the time each specific project is formally proposed through the City permit and licensing procedures.

What may occur in the future is speculative. As to this case, we find no error and affirm the judgment of the trial court.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.