[No. 9652–4–I. Division One. August 16, 1982.]

HARRY DORSTEN, ET AL, *Appellants,* v. THE PORT OF SKAGIT COUNTY, ET AL, *Respondents.*

*Joseph Meagher,* for appellants.

*William H. Nielsen,* for respondents.

RINGOLD, J.—The plaintiffs appeal from a judgment upholding a decision of the Port of Skagit County (Port) to raise the moorage charges at its marina in La Conner, Washington. We affirm the actions of the Port.

Following a regularly scheduled meeting on January 8, 1980, the port commissioners directed the port auditor to prepare a financial study concerning moorage rates at the marina in La Conner. A group of dissatisfied moorage lessees had a financial study prepared by an independent accountant. The port auditor presented his report at the commissioners' meeting on February 27, 1980. At a public hearing held on March 26, 1980, the lessees' accountant presented his report, and members of the public were permitted to comment on the moorage rates.

At the next regular meeting on April 8, the commissioners voted 2 to 1 to raise the moorage rates by approximately 80 percent, the amount proposed by the Port's auditor. Commissioners Sandell and Pederson voted in favor of the increase and Commissioner Magin voted against it. The Port's attorney was directed to prepare a formal resolution increasing the rates for adoption at the next regular meeting. At the next regular meeting, held on April 22, resolution 80–22 was passed by a 2-to-0 vote. Commissioner Magin was not present.

The moorage lessees filed a petition for a writ of certiorari in superior court. The trial court issued a preliminary writ and also ordered the Port to desist from implementing the increased moorage rates. The court later conditioned the order that the Port not charge the new rate on the

posting of a bond sufficient to cover the Port's projected lost rents. Plaintiffs did not post the bond and the Port increased the moorage rates.

Following trial, a judgment was entered dismissing the writ of certiorari with prejudice and upholding the decision of the Port. This appeal follows.

### JURISDICTION TO REVIEW ACTION OF PORT

■ The Port contends that the superior court lacked subject matter jurisdiction to review the decision of the Port. The Port asserts that a statutory writ of certiorari, as provided in RCW 7.16.040, is only available to review the actions of an agency when it is "exercising judicial functions," or "quasi–judicial functions," citing *State ex rel. Hood v. State Personnel Bd.*, 82 Wn.2d 396, 399, 511 P.2d 52 (1973). Four factors are considered in determining whether an action is considered quasi–judicial:

> (1) whether a court could have been charged with making the agency's decision; (2) whether the action is one which historically has been performed by courts; (3) whether the action involves the application of existing law to past or present facts for the purpose of declaring or enforcing liability; and (4) whether the action resembles the ordinary business of courts as opposed to that of legislators or administrators.

*Washington Fed'n of State Employees v. State Personnel Bd.*, 23 Wn. App. 142, 145–46, 594 P.2d 1375 (1979). *Accord, Williams v. Seattle Sch. Dist. 1*, 97 Wn.2d 215, 218–19, 643 P.2d 426 (1982).

Applying these factors, we conclude that fixing moorage rates at a marina is not a quasi–judicial function, but is instead a "quasi–legislative policy determination of prospective application after holding a legislative fact–finding hearing." *Washington Fed'n of State Employees*, at 146. The Port's decision setting moorage rates is not subject to review by a statutory writ of certiorari.

■ A superior court is empowered, however, to review nonjudicial agency actions under its inherent judicial power. *Williams*. This is sometimes referred to as "consti-

tutional certiorari." *King Cy. v. State Bd. of Tax Appeals,* 28 Wn. App. 230, 237, 622 P.2d 898 (1981).

Some decisions hold that administrative action is subject to inherent review only if it (1) is arbitrary, capricious, or contrary to law *and* (2) violated "fundamental rights." *See, e.g., State ex rel. Hood v. State Personnel Bd., supra; State ex rel. DuPont–Fort Lewis Sch. Dist. 7 v. Bruno,* 62 Wn.2d 790, 384 P.2d 608 (1963). In *Williams,* however, the court held that the consideration of "fundamental rights" is not a separate requirement for review. Thus, the trial court here had the inherent power to review the plaintiffs' claim that the Port's increase in moorage rates was arbitrary, capricious or contrary to law.

The Port also argues that the court lacked jurisdiction because RCW 53.08.070 provides that a port district may fix the rates of dockage "without right of appeal therefrom". This statutory limitation of judicial review, however, does not abridge a court's constitutionally inherent power of review. *Williams,* at 218; *State ex rel. Cosmopolis Consol. Sch. Dist. 99 v. Bruno,* 59 Wn.2d 366, 369, 367 P.2d 995 (1962).

## OPEN PUBLIC MEETINGS ACT

Plaintiffs contend that in enacting the resolution increasing the rates the Port did not comply with the notice requirements of the Open Public Meetings Act of 1971 because it was not on the agenda for the meeting of April 22, 1980. RCW 42.30.060 provides:

> No governing body of a public agency shall adopt any ordinance [or] resolution . . . except in a meeting open to the public and then only at a meeting, the date of which is fixed by law or rule, or at a meeting of which notice has been given according to the provisions of this chapter. Any action taken at meetings failing to comply with the provisions of this section shall be null and void.

The primary requirement for regularly scheduled meetings is that they be "open to the public." Notice of the agenda is required only for special meetings. RCW 42.30.080. The resolution increasing the moorage rates was passed at the

regularly scheduled meeting on April 22, 1980. The Port was not required to provide notice of the agenda of that meeting and there was no violation of the Open Public Meetings Act of 1971.

### PUBLIC UTILITY ACT

■ The trial court's conclusion of law 5 states: "[t]here is no violation of the public utility laws in the rate making process followed." Plaintiffs have cited a variety of statutory provisions to support their claim that the marina rates are subject to the authority of the Utilities and Transportation Commission and that the Port did not comply with those statutes. Most of plaintiffs' arguments are based on the premise that in operating a public marina the Port is operating as a wharfinger or warehouseman and is, therefore, subject to the jurisdiction of the Utilities and Transportation Commission. Although the Legislature has repealed RCW 81.94, RCW 81.94.010 defined "wharfingers" and "warehousemen" as those who operate docks for the purpose of discharging or receiving freight for the public for hire. This definition does not include a public marina.

Plaintiffs' reliance on RCW 80.04.130 is also misplaced because that section applies only to "public service companies" which are defined in RCW 80.04.010 to include only utilities. It does not include port districts.

The case of *State ex rel. Port of Seattle v. Department of Pub. Serv.*, 1 Wn.2d 102, 95 P.2d 1007 (1939), does not support the plaintiffs' contention because it only holds that the *warehousing* activities of a port district were subject to the Utilities and Transportation Commission.

Finally, the Port points out that RCW 53.08.070 only requires that the Port give notice of its rates to the Utilities and Transportation Commission. The Port complied with this requirement.

### PORT COMMISSIONER: A DE FACTO OFFICER

Plaintiffs argue that the decision to raise the marina

rates is invalid because Commissioner Pederson does not reside in the district that he was elected to represent as required by RCW 53.12.020. RCW 53.12.140 provides that "[a] vacancy in the office of port commissioner shall occur . . . by any statutory disqualification". Plaintiffs argue that the mandatory language that a vacancy "shall occur" precludes the disqualified officer from exercising duties as a de facto officer, citing *State ex rel. Austin v. Superior Court,* 6 Wn.2d 61, 106 P.2d 1077 (1940), *State ex rel. Cooper v. Warnock,* 16 Wn.2d 697, 134 P.2d 706 (1943), and *In re Simmons,* 65 Wn.2d 88, 395 P.2d 1013 (1964). None of these cases addresses the validity of acts performed by one who is disqualified from holding office.

■ The Port argues that: the doctrine of de facto officers is well settled in Washington; case law establishes that the actions of a de facto officer are valid; and the qualifications of an officeholder may only be challenged by a quo warranto proceeding or by a person who claims to be the rightful officeholder. In *Green Mt. Sch. Dist. 103 v. Durkee,* 56 Wn.2d 154, 351 P.2d 525 (1960), the plaintiffs sought to invalidate a decision of a county committee on similar grounds. The pertinent statute in *Green Mountain,* RCW 42.12.010, provides that an office "shall become vacant" if an officer ceases to be a resident of the district from which he or she was elected. The court held that the officers were de facto officers; their actions cannot be collaterally attacked; and, the only proper means of challenging the qualifications of a member of a public body is to commence a quo warranto proceeding.

We hold that Pederson's position as a port commissioner in the case at bench cannot be challenged in this proceeding insofar as his actions as a commissioner are questioned by virtue of his residency. He was a de facto officer and his actions were valid. *See Snohomish Cy. Builders Ass'n v. Snohomish Health Dist.,* 8 Wn. App. 589, 508 P.2d 617 (1973).

## APPEARANCE OF FAIRNESS

The plaintiffs contend that the appearance of fairness doctrine was violated because Commissioner Sandell was an owner or part owner of a private marina in the San Juan Islands in competition with the Port's marina, and Commissioner Pederson made up his mind to raise the moorage rates before the public hearing was held.

The appearance of fairness doctrine only applies to a public hearing required by statute. *Polygon Corp. v. Seattle,* 90 Wn.2d 59, 578 P.2d 1309 (1978); *Smith v. Skagit Cy.,* 75 Wn.2d 715, 740, 453 P.2d 832 (1969). Stated alternatively, the doctrine applies only to judicial and quasi–judicial actions. *Westside Hilltop Survival Comm. v. King Cy.,* 96 Wn.2d 171, 176–79, 634 P.2d 862 (1981); *Fleming v. Tacoma,* 81 Wn.2d 292, 295–300, 502 P.2d 327 (1972). The court in *Westside Hilltop Survival Comm.* at page 177 framed the difference between quasi–judicial action and legislative action in terms of whether the agency is acting "in its role as a hearing and fact–finding tribunal," or "in a policy making capacity."

Here, a public hearing was not required. The commissioners were acting largely in a policymaking capacity and not as a factfinding tribunal. The Port's decision is legislative rather than judicial and the appearance of fairness doctrine does not apply.

## ARBITRARY AND CAPRICIOUS ACTION

The scope of judicial review under a court's inherent power is narrow. The court may review only to determine: (1) if the agency's "*conclusions* may be said to be, *as a matter of law,* arbitrary, capricious, or contrary to law", *Williams,* at 221, quoting *Helland v. King Cy. Civil Serv. Comm'n,* 84 Wn.2d 858, 862, 529 P.2d 1058 (1975); (2) "whether the function was legally performed", *Cosmopolis,* at 369; and (3) whether the agency acted outside the limits of its authority, *Port Townsend Sch. Dist. 50 v. Brouillet,*

21 Wn. App. 646, 652–53, 587 P.2d 555 (1978); *cf. King Cy. v. State Bd. of Tax Appeals,* 28 Wn. App. 230, 241–43, 622 P.2d 898 (1981).

The plaintiffs claim that the decision increasing moorage rates was arbitrary and capricious because Commissioners Sandell and Pederson were predisposed to raise the moorage rates and ignored the information which plaintiffs and their accountant provided.

■ Action is arbitrary and capricious where "there is no support in the record for the action", *Barrie v. Kitsap Cy. Boundary Review Bd. (Barrie III),* 97 Wn.2d 232, 236, 643 P.2d 433 (1982).

> It refers to willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action. Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous.

*Abbenhaus v. Yakima,* 89 Wn.2d 855, 858–59, 576 P.2d 888 (1978).

Plaintiffs have not met their burden of establishing that the action was arbitrary and capricious. It is not improper for a legislative decision to be made in part on a legislator's personal predilection or preconception. *Westside Hilltop Survival Comm.,* at 179. The decision to raise the rates is supported by the report of the auditor, and was a reasoned decision taken with regard to the facts. The Port's action was therefore not arbitrary or capricious.

## BOND PENDING REVIEW

Plaintiffs contend that the trial court erred in requiring them to post a bond before ordering the Port to desist from increasing the moorage rates. Since we affirm the Port's action and the trial court's decision, this issue is moot and need not be considered.

Affirmed.

JAMES and CORBETT, JJ., concur.

Reconsideration denied September 13, 1982.

Review denied by Supreme Court December 3, 1982.