[No. 7241-0-III.   Division Three.   November 18, 1986.]

RONALD KENNEY, ET AL, *Respondents*, v. WALLA
WALLA COUNTY, ET AL, *Appellants*.

*Arthur R. Eggers, Prosecuting Attorney,* and *James L. Nagle, Deputy,* for appellants.

*William E. Bloor,* for respondents.

THOMPSON, J.—Walla Walla County appeals a ruling on summary judgment that a newly enacted stock restriction ordinance is void. The County contends the action taken in passing the ordinance was not reviewable either by statutory writ of certiorari or as an action that was arbitrary and capricious. We reverse.

In October 1983, a petition was filed with the Walla Walla county commissioners requesting that land then designated as open range for grazing livestock be reclassified to a stock restricted area. The County had previously closed part of the open range in 1916 and again in 1957. On November 15, 1983, a hearing was held, after publication of notice as required by RCW 16.24.050 and RCW 16.24.020. Based on testimony presented during the hearing, it was determined that a larger area than first involved should be considered for closure. Therefore, after due notice, a second public hearing was held on December 13, 1983. Testimony was presented both favoring and opposing closing the range.

Thereafter, on January 31, 1984, the county commissioners passed ordinance 174, pursuant to authority granted in RCW 16.24.010 and RCW 16.24.050.[1] The ordinance closed all but a small portion of the previously open range. A number of property owners within the affected area filed an application together with supporting affidavit in the supe-

---

[1]RCW 16.24.010 provides:

"Restricted areas authorized. The board of county commissioners of any county of this state shall have the power to designate by an order made and published, as provided in RCW 16.24.030, certain territory as stock restricted area within such county in which it shall be unlawful to permit livestock of any kind to run at large: *Provided,* That no territory so designated shall be less than two square miles in area: *And provided further,* That RCW 16.24.010 through 16.24-.065 shall not affect counties having adopted township organization. All territory not so designated shall be range area, in which it shall be lawful to permit livestock to run at large."

rior court, seeking a writ of certiorari. On February 10, 1984, a writ was issued granting review of the action of the county commissioners in passing ordinance 174. Thereafter, the court denied a motion for judgment on the pleadings wherein Walla Walla County contended since its action was legislative, it was not reviewable by statutory writ of certiorari.

Over the next year and a half, several hearings were held. In June 1985, the court granted summary judgment in favor of opponents of the closure, holding the ordinance void. The County appeals, contending the trial court lacked jurisdiction to review the passage of ordinance 174.

This case presents two basic issues. First, was the action taken by the county commissioners quasi judicial, and thus reviewable under RCW 7.16.040 (statutory writ of certiorari) or legislative and therefore not subject to statutory certiorari? Second, even if classified as legislative, will the court's inherent power to review administrative actions allow review here?

### STATUTORY WRIT OF CERTIORARI

RCW 7.16.040 limits writs of certiorari to review of essentially judicial or quasi–judicial actions of an inferior tribunal, board or officer. The statutory writ may not be used to review purely legislative, executive or ministerial acts of agencies. *Washington Fed'n of State Employees v. Personnel Bd.*, 23 Wn. App. 142, 145, 594 P.2d 1375 (1979). Our courts have developed a 4–part test for determining whether administrative actions are "judicial".

(1) whether a court could have been charged with making the agency's decision; (2) whether the action is one which historically has been performed by courts; (3) whether the action involves the application of existing law to past or present facts for the purpose of declaring or enforcing liability; and (4) whether the action resembles the ordinary business of courts as opposed to that of legislators or administrators.

*Washington Fed'n of State Employees*, at 145–46; *Williams v. Seattle Sch. Dist. 1*, 97 Wn.2d 215, 218, 643 P.2d

426 (1982); *Kerr–Belmark Constr. Co. v. City Coun.,* 36 Wn. App. 370, 372, 674 P.2d 684 (1984).

A brief look at history is helpful to place in proper perspective the action of the county commissioners in creating a stock restricted area. At English common law, the owner *of domestic animals, such as cattle,* had the burden of confining them within an enclosed area. If the animals trespassed on the land of another, the landowner, whether his land was fenced or not, had a cause of action against the cattle owner, regardless of fault. This rule of law was clearly unacceptable and impracticable in the western United States. Thus, the common law burden was reversed and fencing out statutes were enacted. *See Bly v. McAllister,* 58 Wn. 2d 709, 711–12, 364 P.2d 500 (1961); *Kobayashi v. Strangeway,* 64 Wash. 36, 116 P. 461 (1911); *see also Maguire v. Yanke,* 99 Idaho 829, 590 P.2d 85, 91 (1979). A landowner who wished to prevent cattle from trespassing on his land had the burden of building the fence.

As rural populations and farming increased, legislatures began responding to increased pressure from constituents by permitting local authorities to designate certain areas closed to roaming livestock. RCW 16.24.010 is the progeny of such laws, originally enacted as Laws of 1911, ch. 25, § 1, amended to its present form by Laws of 1937, ch. 40, § 1. The 1937 amendment eliminated the need to petition the county commissioners for a stock restricted, or "fencing in" zone. Now, the county commissioners initiate the creation of stock restricted areas and, with the exception of counties adopting township organization, "[a]ll territory not so designated shall be range area, in which it shall be lawful to permit livestock to run at large". Conversely, RCW 16.24-.065 makes it unlawful for the owner of certain livestock to "wilfully or negligently allow such livestock to run at large in any stock restricted area".

By applying the above mentioned four criteria, we conclude the decision to open the range and the subsequent decision to close will not qualify as judicial action for purposes of RCW 7.16.040. First, the decision is not one a

court could have been charged with making. The designation of the boundaries of the "closed range" is left statutorily to the county commissioners. Even though a petition by specific property owners may have prompted the commissioners to act here, this is not required. Second, courts historically have not been involved in closing the range. Third, the action taken, like the original range law's passage, does not apply existing law to past or present facts but, instead, assesses political choices and policy reasons to arrive at a difficult decision. The proceedings are similar to legislative factfinding hearings rather than adjudicative hearings. Finally, the process involved does not resemble the ordinary business of courts as opposed to that of legislation or administration. While proponents and opponents certainly were disputing each other's positions, that was the case as well when the State Legislature in 1911 chose to allow closing of the range. No persuasive argument can be made that hearings held at that time were adjudicative in nature. Thus, the presence of disputants and of an identifiable area of land does not of itself transform this into an adjudication of rights in which the decision turns upon the resolution of particular facts. *See* B. Schwartz, *Administrative Law* §§ 5.6, 5.7 (2d ed. 1984).

The State Legislature, in RCW 16.24.020, requires the board of county commissioners to hold a hearing "to hear all persons interested in the establishment of range areas or stock restricted areas . . ." As noted, such a hearing requirement resembles legislative factfinding and those aggrieved must resort to the voting booth for relief. The strict procedural safeguards applicable to quasi–judicial hearings which adjudicate individual rights do not apply to hearings legislative in nature. *Evergreen Sch. Dist. 114 v. Clark Cy. Comm. on Sch. Dist. Org.,* 27 Wn. App. 826, 832, 621 P.2d 770 (1980). Like changing school district boundaries, altering the boundaries of a stock restricted area is an exercise of legislative power delegated by statute to, and administered by, county commissioners. It fails the 4–part test and cannot be characterized as quasi judicial.

Respondents argue that the County's action is comparable to a rezone. Washington courts hold action by local legislative bodies amending a zoning code or reclassifying land thereunder to be an adjudicatory act. *Barrie v. Kitsap Cy.,* 93 Wn.2d 843, 852, 613 P.2d 1148 (1980); *Parkridge v. Seattle,* 89 Wn.2d 454, 460, 573 P.2d 359 (1978); *Woodcrest Invs. Corp. v. Skagit Cy.,* 39 Wn. App. 622, 694 P.2d 705 (1985). Therefore, such action is reviewable by certiorari.

In determining rezones to be quasi judicial, the court in *Fleming v. Tacoma,* 81 Wn.2d 292, 299, 502 P.2d 327 (1972) listed three characteristics that differentiate rezones from other official acts and justify their being categorized as adjudicatory: (1) Parties whose interests are affected are readily identifiable . . . the decision has a far greater impact on one group of citizens than on the public generally; (2) the decision is localized in applicability. The rezone only applies to the immediate area rezoned; and (3) zoning hearings are required by statute, thus recognizing the process must be more sensitive to individual rights involved.

Here, those opposed to closing the range argue the action is between readily identifiable proponents and opponents; a hearing was required by statute; and the order entered decided and altered existing legal rights between neighboring landowners, all similar to the rezone. However, unlike a rezone, there is no change in permitted land use; landowners may continue to run cattle on their land. The ordinance merely shifts the common law burden to the cattle owner and prohibits his allowing cattle to run at large. Land use remains the same.

While the respondents point out that 44 landowners were readily identified, the closing of the range affects others as well. In addition to cattle owners and those complaining of trespassing cattle, the traveling public who, prior to closure, might encounter cattle on highways in the open range at their own peril, have an interest. *See Scanlan v. Smith,* 66 Wn.2d 601, 604, 404 P.2d 776 (1965); *Bly v. McAllister, supra; Berendt v. Young,* 7 Wn. App. 299, 303, 499 P.2d 77 (1972). Land not closed is also directly affected as noted by

the testimony of landowners living outside the open range whose land and crops suffer damage by roaming animals.

A similar rezone analogy was relied on in *Kerr–Belmark,* at 372. There, a city–created sewer utility service area was reduced in size, after public hearings. Kerr–Belmark Construction Co. asked that its 42 acres of unimproved land, intended for residential housing, be allowed to remain within the service area. Kerr–Belmark likened the city's action to a zone change. The court rejected that contention, saying "[t]hat a parcel of land was included while Kerr–Belmark's was excluded does not change this action into an 'adjudication of rights' between one property owner and another." *Kerr–Belmark,* at 373. Similarly, the fact that several thousand acres of land were "closed" based on considerations voiced by persons affected does not thereby transform this action into a rezone.

Unlike an application for a PUD, *see Johnson v. Mount Vernon,* 37 Wn. App. 214, 679 P.2d 405 (1984), or a petition for a zone change, *Fleming; Parkridge,* there appear no well reasoned limitations on the commissioners' legislative discretion. They do not have to show change of conditions to warrant amendment. *Parkridge,* at 462. The statute appears to give them legislative discretion, subject only to public input. Thus, the decision here more closely resembles the enactment of initial zoning legislation or a comprehensive plan, neither of which is characterized as quasi judicial. *See Fleming,* at 299.

The trial court's decision was based on its determination the commissioners' action was essentially a rezone. Because the closure was legislative and not quasi judicial, the commissioners' actions were not subject to review through a writ of certiorari.

## INHERENT POWER OF REVIEW

▪ Aside from review under writ authority, a court has inherent authority to review the actions of an administrative agency to determine if its conclusions are, as a matter of law, arbitrary and capricious. *Williams v. Seattle Sch.*

*Dist. 1, supra.* As noted in *Kerr–Belmark,* the scope of such review is limited. The court, "in deciding whether to grant review, looks initially to the petitioner's allegations to determine whether, if true, they clearly demonstrate such a violation". *King Cy. v. Board of Tax Appeals,* 28 Wn. App. 230, 238, 622 P.2d 898 (1981). Arbitrary and capricious is defined as willful and unreasoning action without consideration and in disregard to facts and circumstances. Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached. *Bennett v. Board of Adj.,* 29 Wn. App. 753, 755, 631 P.2d 3 (1981).

Those opposed to closing the range alleged in their original affidavit in support of application for a writ of certiorari that (1) the commissioners lacked the authority and jurisdiction to enact ordinance 174; (2) the commissioners acted under a statute, RCW 16.24, which is an unconstitutional delegation of power by the Legislature; (3) the commissioners acted in an arbitrary and capricious manner; (4) the commissioners acted without due regard for procedure and notice; (5) the commissioners erred in law and in fact. These are bare assertions with no supporting facts of any kind and do not demonstrate that the commissioners' action was "'willful and unreasoning . . . taken without regard to consideration of the facts and circumstances . . .'" *Kerr–Belmark,* at 374 (quoting *Dorsten v. Port of Skagit Cy.,* 32 Wn. App. 785, 793, 650 P.2d 220, *review denied,* 98 Wn.2d 1008 (1982)). As in *Kerr–Belmark,* the petitioners failed to meet their initial burden of alleging facts which, if true, showed arbitrary and capricious action.

The submission of James Burres' affidavit of June 4, 1984 will not cure the failure to meet the initial burden. In his affidavit, Mr. Burres alleged that the commissioners, in changing the designation of the land from open range to a stock restricted area, failed to enter written findings of fact and conclusions of law. However, the court issued its writ without regard to the affidavit.

In any event, lack of formal findings of fact and

conclusions of law will not support a finding the commissioners acted in an arbitrary and capricious manner. The trial court's conclusion that findings were necessary was again based on the determination the range closure was quasi judicial. *Parkridge v. Seattle, supra* at 464, requires both a verbatim record of proceedings and findings of fact and conclusions or reasons based on the record where action taken is, in effect, a rezone. Failure to enter such findings and conclusions constitutes arbitrary and capricious action. *Johnson v. Mount Vernon, supra* at 219. However, as previously noted herein, closure of the range is properly characterized as legislative action. Thus, the strict procedural safeguards necessitating written findings to ensure fairness in quasi–judicial hearings do not apply. *Evergreen Sch. Dist. 114,* at 832. Failure to make findings of fact and conclusions of law does not of itself constitute arbitrary and capricious action. Absent appropriate allegations of fact, the necessary threshold requirement for invocation of the court's inherent power of review is missing. *King Cy.,* at 238.

We reverse the trial court's order on summary judgment and remand for reinstatement of the decision of the Walla Walla Board of County Commissioners.

GREEN, C.J., and MUNSON, J., concur.

Review denied by Supreme Court March 3, 1987.