[No. 38957. Department Two. September 8, 1966.]

THE STATE OF WASHINGTON, *Petitioner*, v. ROBERT WHITNEY, *Respondent*.*

*Reported in 418 P.2d 143.

Lincoln E. Shropshire and Benjamin N. Brunner, for petitioner.

J. W. McArdle (of Palmer, Willis & McArdle) and Charles O. Shoemaker, Jr., for respondent.

ROSELLINI, C. J.—The respondent was charged with the crime of intentionally taking an automobile without permission of the owner. After the jury had been sworn but before the prosecutor's opening statement, the respondent's counsel advised the trial court, in chambers, that he would object to the admission of fingerprint impressions taken from the respondent on the ground that such evidence was privileged under RCW 72.50.100.

The trial court signed an order rejecting the state's offer of proof but granted a continuance, and the respondent consented to a dispersal of the jury for the purpose of allowing the state to apply to this court for a writ of certiorari to review the trial court's ruling on the motion.

At the outset, the petitioning state concedes that the law appears to be against its right to the writ. In the case of State ex rel. Douglas v. Stratiner, 119 Wash. 667, 206 Pac. 353 (1922), the state asked this court to review by certiorari an order of the trial court granting a motion to suppress evidence. At that time, the state's right of appeal was governed by statute, Rem. Code § 1716, which provided:

But an appeal shall not be allowed to the state in any

criminal action, except when the error complained of is in setting aside the indictment or information, or in arresting the judgment on the ground that the facts stated in the indictment or information do not constitute a crime, or is some other material error in law not affecting the acquittal of a prisoner on the merits.

In deciding that the writ should not issue, this court said that the legislature, when it provided that an appeal should not be allowed except in the specified instances, deprived the court of the power to review such questions as that which was before it, either by appeal or by certiorari.

■ There are two reasons why this case is no longer controlling. One is that the statute in question was repealed by the legislature. Laws of 1957, ch. 10, § 3(14). It has been superseded by Rule on Appeal 14(8).[1] Another reason, with which the repeal of the statute and the enactment of the court rule are in harmony, is that we have since held that the legislature may not deprive the court of its constitutional power of review. *State ex rel. Cosmopolis Consol. School Dist. No. 99 v. Bruno*, 59 Wn.2d 366, 367 P.2d 995 (1962).

It is true the majority of courts have held that, at common law, the state did not have the right of appeal in a criminal case, but this does not mean that the Supreme Court did not have the power to review a criminal case at the behest of the state. The rule denying the state the right to appeal was a common law rule developed or adopted by the courts, and it was neither a constitutional nor a statutory restriction on the judicial power of the courts. Since the rule was made by the courts, it can be changed by the courts; and any expressions found in the cases to the effect that the state has only such rights of review as are granted by the legislature do not represent an abdication of judicial power but only an unwillingness to exercise it.

Whether this power should be exercised to expand the state's right to review in criminal cases is a question not

---

[1] This rule, however, contains substantially the same provision as the prior statute, and consequently the right of the state to appeal remains essentially the same.

before us now. The rule that the state may not appeal has been criticized by legal scholars. See Moreland, *Modern Criminal Procedure,* ch. 19 (1959); Miller, *Appeals by the State in Criminal Cases,* 36 Yale L.J. 486 (1927); Skelton, *State Appeals in Criminal Cases,* 32 Tenn. L. Rev. 449 (1965).

The author of the most recent of these discussions points out that there was a time in England when neither the Crown nor the defendant could appeal a criminal case. At that time, the Crown had considerable advantage over the accused, who was not allowed to take the stand in his own defense, or to call witnesses, or to have counsel. Furthermore, torture was often resorted to for the purpose of extracting confessions. It was not surprising, therefore, that the courts and the legislatures of this country should have limited rather strictly the right of the state to appeal. Great concern was felt in this country for the rights of the accused because of the abuses which had been heaped upon him.

However, it soon appeared that a rule which permitted the defendant to appeal, but denied the right of appeal to the state, tended to produce a lopsided administration of justice. Therefore, legislatures began to accord to the state a limited right of appeal; but they have also been cautious in extending such a right, apparently out of concern lest the defendant's constitutional right not to be twice placed in jeopardy for the same offense be invaded. Those who advocate that the state should have the same right of appeal as the defendant argue that the concept of double jeopardy does not logically embrace the conclusion that a second trial, granted after an appeal, is a second jeopardy, but that it is all a part of the same jeopardy.

These writers also urge that there is no longer any merit in the contention that an appeal by the state works an undue hardship on the criminal defendant. It is not a greater hardship than that imposed on a respondent in a civil case, they maintain, and this is true even where the defendant is indigent, now that the courts have accorded

to the indigent the right to have counsel paid by the state and a free transcript of the record. Just as the accused has a right to the protection of all the constitutional guarantees, to the end that he may not be unjustly convicted (and the courts in recent years have been particularly solicitous of this right), so society has a right to the protection from its enemies which the criminal laws are designed to effect. The appellate courts should not be closed to the majority, who have expressed their needs and desires through the legislature, any more than they should be closed to the accused.

However, as we have said, we are not called upon here to determine whether Rule on Appeal 14(8) accords too little redress to the state and should be revised. Rather, we are asked to provide an extraordinary remedy which it is within the discretion of this court to grant. It is true that, as a general rule, we will not grant certiorari to review an interlocutory order such as that complained of here. *State ex rel. Douglas v. Stratiner*, 119 Wash. 667, 206 Pac. 353. The reason for this rule is that cases should not be tried piecemeal; and questions arising during the course of the trial can, ordinarily, be reviewed on appeal. But the state is not given the right to appeal from an order excluding evidence, and it cannot appeal from a judgment of acquittal. It is evident, therefore, that the question which the state asks us to review is not one which this court will take cognizance of on an appeal, where the order is adverse to the state.

The question then occurs, if we will not review it on appeal under our own rule, why should we review it on certiorari? And the answer to that, in the great majority of cases, would be that we should not. The disrupting of the trial is as great, if not a greater mischief than the refusal to correct error which inures to the benefit of the accused.

However, there are several factors in the case before us which render it different from the ordinary case and weigh in favor of our granting certiorari. First, it is urged before us that the error alleged is not unlikely to recur in other

courts in Yakima, and perhaps in others, and counsel for the respondent can give us no assurance to the contrary. Second, it involves a patently erroneous construction of a statute, as a result of which the prosecution has been deprived of a long accepted and highly useful and reliable means of establishing responsibility for a crime. Thus it threatens a serious interference with the legitimate prosecution of criminal cases.

Because we conceive that the public has an important and justified interest in the proper administration of criminal justice and that a thwarting of that interest is apt to follow if this erroneous construction of a legislative enactment is not corrected, we deem it appropriate here to grant the writ.

The statute in question, RCW 72.50.010 *et seq.*, establishes a central office, designated the "state bureau of criminal identification," which

shall be maintained for the purpose of providing:

(1) An authentic record of each person who is arrested for any crime against the state as described in RCW 72.50.060;

(2) Information relative to the identity of each person so arrested; and

(3) A record of the final disposition of each such arrest.

RCW 72.50.080 provides:

*Availability of records—Fugitive circulars.* The records of the bureau shall be available for official use of all law enforcement agencies, prosecuting attorneys, parole officers, penal institutions, state hospitals for the mentally ill, and the state narcotic farm colony. The bureau shall assist prosecuting attorneys, county sheriffs and chiefs of police in the preparation and distribution of circulars relative to fugitives when so requested.

RCW 72.50.100 provides:

*Bureau's files privileged—Who may obtain transcripts.* Information in the files of the bureau relative to the commission of a crime by any person shall be considered privileged and shall not be disclosed for any purpose except as authorized by this chapter . . . .
RCW 72.50.040 requires that all persons arrested for

any of the crimes specified, except juveniles, shall submit to the taking of their fingerprints, photographs, physical description and other identifying data.[2]

 The trial court was of the opinion that the intent of RCW 72.50.100 was to give the defendant a privilege against use of his fingerprints in a prosecution for a crime. We find no such intent expressed in the statute. That section of the statute expressly permits the disclosure of information "as authorized by this chapter." Elsewhere in the chapter, in RCW 72.50.080, it is provided, *inter alia*, that the records of the bureau shall be available for *official use* of all prosecuting attorneys. There is no limitation on the official use to which the prosecuting attorney may put the information.

One of the duties of a prosecuting attorney, of course, is to prosecute criminal actions. RCW 36.27.020. It would be an anomalous assumption that the legislature set up a bureau for the purpose of aiding criminal identification and then forbade prosecuting attorneys to use the information provided by it in the prosecution of criminal actions, and we find no such intent expressed in the statute. The respondent advances no plausible reason why the legislature should see fit to deprive prosecutors of one of their most reliable techniques of proof. Read as a whole, this chapter clearly evidences a contrary intent—the intent, that is, to make such information readily available to prosecutors when needed.

The respondent does suggest that the legislature may have thought that, if arrested persons are required to submit to the taking of impressions of their fingerprints, to permit the use of such fingerprint impressions as evidence would constitute an invasion of their privilege against self-incrimination. If this was the legislative thought, it is reasonable to assume that it would have been provided expressly that fingerprint records made available by the bureau were

---

[2]Insofar as this court can determine, this office was never activated, due to the fact that the legislature failed to appropriate funds to support it.

not to be used in any prosecution of the person; but no provision of this kind is to be found in the statute. The records of the bureau (but not exclusively the fingerprint records) are declared privileged. They are not to be disclosed "except as authorized by this chapter." The chapter authorizes their disclosure to all prosecuting attorneys for their official use with no restrictions on such use. It is apparent, therefore, that the legislature did not undertake to decide what information would be admissible in court but left questions of its admissibility to be determined by the courts when such information should be offered, according to the applicable rules and statutes.

The fingerprint impressions taken from the respondent in this case were not submitted to the bureau, of course, and the question may arise in the mind of the reader, what applicability does the statute have? It is the rationale of the respondent, adopted by the trial court, that since the statute requires arrested persons to submit to the taking of impressions of their fingerprints, the section of the statute declaring the records privileged applies, even though the prints were not and could not be submitted to the bureau.

The respondent also makes a contention that "official use" means things like "distribution of circulars," according to the doctrine of ejusdem generis. This doctrine, which applies to statutory construction, holds that where there are specific words followed by general words, the specific words govern the character or kind of matter included in the general words. *King Cy. Water Dist. No. 68 v. Tax Comm'n* 58 Wn.2d 282, 362 P.2d 244 (1961). There are no specific words preceding the words "official use." The words "distribution of circulars" not only do not precede this phrase but are contained in a succeeding sentence, the meaning of which is independent of the sentence preceding it. Consequently, the doctrine has no applicability here.

We hold that RCW 72.50.100 does not forbid the use in criminal prosecutions of fingerprint impressions taken pursuant to the provisions of RCW 72.50.040.

264

The order is reversed and the cause remanded with directions to proceed accordingly.

DONWORTH, WEAVER, and HAMILTON, JJ., and TURNER, J. Pro Tem., concur.