[No. 8465–8–I. Division One. January 19, 1981.]

KING COUNTY, ET AL, *Appellants,* v. WASHINGTON STATE BOARD OF TAX APPEALS, ET AL, *Respondents.*

KING COUNTY, ET AL, *Appellants,* v. WASHINGTON STATE BOARD OF TAX APPEALS, ET AL, *Respondents.*

Norm Maleng, Prosecuting Attorney, and William Severson, Deputy, for appellants.

Slade Gorton, Attorney General, Edward Mackie, Deputy, Bogle & Gates, D. Michael Young, John T. Piper, Houghton, Cluck, Coughlin & Riley, and William Mathias, for respondents.

CALLOW, J.—In a consolidated appeal, King County and the King County Assessor appeal from orders of the King County and Thurston County Superior Courts denying review of two decisions of the Board of Tax Appeals. The issue on appeal is whether the Superior Courts should have granted review of these decisions under either RCW 7.16-.040 or the court's constitutional power of review.

In 1974, the King County Assessor audited the personal property tax listings of Whitney–Fidalgo Seafoods, Inc., for the assessment years 1971–73 under authority of RCW 84.40.340. The Assessor determined Whitney–Fidalgo had underreported the value of personal property accounts for the audited years and made "omitted value assessments" under RCW 84.40.080 to correct this underreported assessment value.

Whitney–Fidalgo appealed these assessments to the King County Board of Equalization, which sustained the assessments. Whitney–Fidalgo then appealed to the Board of Tax

Appeals (BTA), electing an informal hearing under RCW 82.03.140.

BTA reversed the Board of Equalization and disallowed the omitted value assessments. BTA based its ruling on its interpretation of RCW 84.40.085, which provides that "[n]o omitted property or omitted value assessment shall be made for any period more than three years preceding the year in which the omission is discovered." BTA held that this statute, passed in 1973, applied prospectively only and that the Assessor, therefore, had no authority to make an omitted value assessment for years prior to 1974.

The Assessor and King County, in response to this ruling, filed in King County Superior Court an application for writ of certiorari "or in the alternative any other appropriate writ or relief by declaratory judgment." The court denied this application on the grounds that the legislature did not provide that public agencies or officials could seek judicial review of informal BTA decisions, and that the petitioners had not met the requirements for statutory or constitutional certiorari or any other form of extraordinary relief. The Assessor and King County appeal from this denial.

In 1976, the Assessor audited J. P. Stevens & Co., Inc., and determined that the value of the company's finished goods inventory had been underreported for the assessment years 1973–76. The Assessor made omitted value assessments for these years. J. P. Stevens appealed these assessments to the Board of Equalization, which sustained the Assessor. J. P. Stevens then appealed to the Board of Tax Appeals, electing an informal hearing.

The BTA reversed the Board of Equalization. The BTA ruled, as it had in the Whitney–Fidalgo case, that the Assessor did not possess the authority to assess omitted value for years prior to 1974. The BTA also ruled that the Board of Equalization had no authority to hear the appeals for 1974 and 1975, but that those appeals must be heard by reconvened sessions for those years.

The Assessor and King County then filed in Thurston County Superior Court an application for writ of certiorari or other appropriate relief. The court denied the application and dismissed the action on the ground that the plaintiffs had not met the requirements for statutory or constitutional certiorari or any other form of extraordinary relief. The Assessor and King County appeal from this denial and dismissal.

RCW 82.03.180 provides in part:

Judicial review of a decision of the board of tax appeals shall be de novo in accordance with the provisions of RCW 82.32.180 or 84.68.020 as applicable except when the decision has been rendered pursuant to a formal hearing elected under RCW 82.03.140 or 82.03.190, in which event judicial review may be obtained only pursuant to RCW 34.04.130 and 34.04.140 . . .

■ The Supreme Court has construed this statute to preclude judicial review from an informal hearing of the Board of Tax Appeals except through the two specified statutes, RCW 82.32.180 and RCW 84.68.020, which set out taxpayers' rights to seek tax refunds and are inapplicable in the present case. *Pettit v. State Bd. of Tax Appeals,* 85 Wn.2d 646, 538 P.2d 501 (1975).

The Assessor and King County, therefore, sought review in the Superior Courts by alternative means, principally under statutory certiorari pursuant to RCW 7.16.040 and the court's constitutional power of review.

RCW 7.16.040 provides:

A writ of review [certiorari] shall be granted by any court, except a police or justice court, when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law.

RCW 7.16.050 provides that "application [for a writ of certiorari] must be made on affidavit by the party beneficially interested . . ."

Appellants contend that they have met the criteria for statutory certiorari under these statutes. Respondents disagree. Respondents do not dispute that the Board of Tax Appeals exercised "judicial functions" within the meaning of this statute, nor that appellants have no appeal or other remedy at law. They contend principally that appellants lacked standing to seek a writ of certiorari because they were not a party "beneficially interested" under RCW 7.16-.050. In their King County affidavits, the King County Executive and Assessor alleged the BTA's actions resulted in the substantial loss of tax revenues to King County, and that both were "beneficially interested" in the outcome of this action. In their Thurston County affidavits, they stated the Assessor and King County were beneficially interested in the outcome of this action, in part because of their concerns over a substantial loss of tax revenues and the integrity and fairness of the property tax system.

In denying standing to seek statutory certiorari, the King County Superior Court found

> no showing that the decision by the Board of Tax Appeals interferes with the official functions of the King County Assessor or King County Executive. The affidavits of these officials do not reflect a monetary interest in the proceeding sufficient to make them interested parties.

The Thurston County Superior Court made no specific findings on this issue, but also concluded that the plaintiffs lacked standing to qualify for statutory certiorari.

■■ The requirement that application for certiorari be made by the "party beneficially interested" has not been interpreted in a case involving the standing of a governmental entity or official to apply for a statutory writ of certiorari. Appellants ask us, therefore, to apply by analogy the ruling on standing in *Seattle School Dist. 1 v. State*, 90 Wn.2d 476, 585 P.2d 71 (1978). There it was held that the school district had standing to seek a declaratory judgment

on the constitutionality of the State's system for funding public education. The court noted that in past decisions it had liberalized standing requirements for municipal corporations challenging the constitutionality of legislative acts. The court found the school district had standing because it "demonstrated sufficient factual injury" and showed that the interest it sought to protect was within the zone of interest protected by applicable provisions of the state constitution. *Seattle School Dist. 1 v. State, supra* at 494.

The similarity between *Seattle School District* and the instant case, however, is slight. In both cases, local governmental entities claimed financial loss as a result of State action. In *Seattle School Dist. 1 v. State, supra* at 494, the district sought review "of a system of public school financing that undermines its means of existence". The appellants here are unable to demonstrate anything more than the loss of a relatively small amount of tax revenue. Unlike the constitutional questions at issue in *Seattle School District,* the issues for which review was sought here were ones of statutory interpretation.

The appellants argue that the BTA's rulings infringe on the County's constitutionally recognized power to collect taxes. The appellants concede that this taxing power is derived only from legislative grant. *See* Const. art. 11, § 12; *Carkonen v. Williams,* 76 Wn.2d 617, 627, 458 P.2d 280 (1969); *State ex rel. Hansen v. Salter,* 190 Wash. 703, 706, 70 P.2d 1056 (1937). They contend, however, that, once this grant has been made, the County has a sufficient interest in defending its taxing power to allow it to seek review of BTA decisions that limit it. Appellants do not mention that a grant of taxing power does not confer an absolute right to collect property taxes free from state interference. The actions of the assessor are subject to state supervision. *Carkonen v. Williams, supra* at 625. Furthermore, the State "can take away not only the power to tax but the subjects of taxation as well. No person or municipality can acquire, as against the state, a vested right to taxes . . ."

*Gasaway v. Seattle,* 52 Wash. 444, 451, 100 P. 991 (1909). Authority to make omitted value assessments, the primary issue in these cases, is not a constitutional right of the assessor but is derived from RCW 84.40.080 and .085. The BTA has authority to decide appeals from a county board of equalization under RCW 82.03.130(2) and was thus empowered to rule against the appellants in these cases.

To hold that the appellants were "beneficially interested" parties in these cases would enable the County and the Assessor to obtain review by statutory certiorari in every case in which the BTA rules against them. A writ of certiorari, however, is an extraordinary remedy reserved for extraordinary situations. *See Oliver v. American Motors Corp.,* 70 Wn.2d 875, 425 P.2d 647 (1967); *State ex rel. Gebenini v. Wright,* 43 Wn.2d 829, 264 P.2d 1091 (1953). No extraordinary situation was present in these cases. Furthermore, the legislature's purpose in establishing the Board of Tax Appeals was "to provide . . . a convenient and economical form [*sic*] in which the appeals of individual taxpayers may be determined." Laws of 1967, 1st Ex. Sess., ch. 26, § 1, p. 1519. Allowing the appellants standing to seek a statutory writ of certiorari in routine cases such as these would frustrate this purpose. The Superior Courts were correct in ruling that appellants lacked standing to seek that writ.

The superior court also has power, under article 4, sections 1 and 6 of our state constitution, to review by writ of certiorari judicial and nonjudicial actions of an administrative agency. *Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 278, 525 P.2d 774 (1974); *State ex rel. Cosmopolis Consol. School Dist. 99 v. Bruno,* 59 Wn.2d 366, 368–69, 367 P.2d 995 (1962). This constitutional power of review cannot be abridged by the legislature. *State ex rel. Cosmopolis Consol. School Dist. 99 v. Bruno, supra* at 369. To invoke this review, also called constitutional certiorari, a petitioner must allege that the agency acted illegally or engaged in arbitrary and capricious actions violative of the petitioner's fundamental rights.

*State ex rel. Hood v. State Personnel Bd.*, 82 Wn.2d 396, 401–02, 511 P.2d 52 (1973). A superior court, in deciding whether to grant review, looks initially to the petitioner's allegations to determine whether, if true, they clearly demonstrate such a violation. *State ex rel. Hood v. State Personnel Bd., supra* at 402; *State ex rel. Dupont–Fort Lewis School Dist. 7 v. Bruno*, 62 Wn.2d 790, 794, 384 P.2d 608 (1963). If they do, review should be granted and the court may proceed to dispose of the case on its merits. *State ex rel. Hood v. State Personnel Bd., supra* at 402.

In its order denying the appellants' application for writ of certiorari, the Thurston County Superior Court found "that the petitioners lack standing and have no fundamental rights affected which would qualify for . . . constitutional certiorari." The King County Superior Court entered in its order of dismissal findings of fact providing in part:

6. The affidavit submitted by petitioners does not reflect any procedural inequalities or illegal action by the Board of Tax Appeals.

7. There is no showing that the decision by the Board of Tax Appeals interferes with the official functions of the King County Assessor or King County Executive. The affidavits of those officials do not reflect a monetary interest in the proceeding sufficient to make them interested parties.

In conclusions of law, the King County Superior Court stated:

4. The Board of Tax Appeals . . . did not exceed its authority, nor were any procedural irregularities alleged by petitioners.

5. The petitioners do not have any fundamental rights which have been adversely affected by the decision of the Board of Tax Appeals.

6. The petitioners lack standing to invoke the court's jurisdiction.

7. There is no showing that the action of the Board of Tax Appeals was arbitrary or capricious.

█ The nature of the "fundamental rights" requirement is elusive, although prior cases have appeared to treat the assertion of a fundamental rights violation as a prerequisite

for standing to petition for a writ of constitutional certiorari. *E.g., Pettit v. State Bd. of Tax Appeals,* 85 Wn.2d 646, 538 P.2d 501 (1975); *Leschi Improvement Council v. State Highway Comm'n, supra. See* Bjorge, *Standing To Sue in the Public Interest: The Requirements To Challenge Statutes and Acts of Administrative Agencies in the State of Washington,* 14 Gonz. L. Rev. 141, 144–48 (1978).[1] The meaning of "fundamental rights" in this context is similarly unclear. Only one case concerning a court's constitutional power of review has recognized the existence of a fundamental right. *Leschi Improvement Council v. State Highway Comm'n, supra.* There, a "fundamental right" to a healthful environment was expressly provided by statute. The closest to the formulation of a test for the existence of a fundamental right was set forth in *State ex rel. DuPont-Fort Lewis School Dist. 7 v. Bruno,* 62 Wn.2d 790, 384 P.2d 608 (1963). There the petitioner school district had asserted a fundamental right to have its high school accredited by the State Board of Education. The court stated that the test of whether this was a fundamental right was whether the board had discretion to deny accreditation once the school district had met minimum statutory requirements for accreditation. The *DuPont* court found that the board had such discretion and that, therefore, a fundamental right did not exist. The court also stated at page 794:

> The essential touchstone, impelling invocation of the inherent or constitutional power of judicial review . . . is the basic nature and extent or magnitude of the right

---

[1]*Wilson v. Nord,* 23 Wn. App. 366, 597 P.2d 914 (1979), recently came to a different conclusion about the nature of a fundamental right. The *Wilson* court concluded that this requirement is not a requirement for standing but an "alternate formulation" of the rule that a court will only review actions of an administrative agency to determine if the agency's conclusion was arbitrary, capricious, or contrary to law. *Wilson v. Nord, supra* at 372.

> [T]he fundamental right limitation boils down to a rule which says that a complainant with standing has a fundamental right to have the agency abide by the constitution, statutes, and regulations which affect the agency's exercise of discretion.

*Wilson v. Nord, supra* at 373. *Leonard v. Civil Serv. Comm'n,* 25 Wn. App. 699, 611 P.2d 1290 (1980), recently followed the *Wilson* analysis.

involved coupled with the patency and character of the alleged violation.

*Pettit v. State Bd. of Tax Appeals, supra,* found that the county assessor there had failed to assert a fundamental right that would entitle him to invoke the court's constitutional power of review. Perhaps mindful of this decision, the King County Assessor added King County as a plaintiff in this action. In their affidavits to the King County Superior Court, the Assessor and the County Executive alleged as a violation of a "fundamental right" the substantial loss of tax revenues. In their affidavits to Thurston County, they alleged the "violation of numerous fundamental rights," including the loss of substantial tax revenues, "the right to maintain the integrity and fairness of the property tax system . . ., and the right of the citizens of King County to the fair and legal interpretation of the tax laws of the State . . ."

In their brief in support of the affidavits, appellants cited the state constitutional basis of a county's taxing authority in asserting their claim of the existence of a fundamental right. They referred to analogous cases in which local governmental entities were held to have standing to challenge actions of the State. *Seattle School Dist. 1 v. State,* 90 Wn.2d 476, 585 P.2d 71 (1978); *Snohomish County Bd. of Equalization v. Department of Revenue,* 80 Wn.2d 262, 493 P.2d 1012, *appeal dismissed,* 409 U.S. 810, 34 L. Ed. 2d 65, 93 S. Ct. 68 (1972). The respondents deny the existence of a fundamental right here.

Here, there is no statutorily expressed fundamental right as in the *Leschi* case. The *DuPont* case requires us to focus on the relationship between the rights asserted by the appellants and the character of the alleged violation of those rights. It also requires that we ask whether the administrative agency had discretion to deny the rights asserted by the appellants within the agency's statutory guidelines. We conclude that the appellants have alleged nothing that can be said to constitute a violation of their fundamental rights.

The claims of fundamental rights violations in appellants' affidavits to the Superior Courts constitute only an assertion that the County and the Assessor have a right to have their interpretation of the State's tax laws applied by the Board of Tax Appeals. This is not a right fundamental to any governmental officer or entity. The discussion above on the limitations of a county's taxing power is equally applicable here. The BTA has authority to decide appeals from a county board of equalization and, therefore, had discretion to rule against the appellants in these cases. *See* RCW 82.03.130(2). The cases of *Seattle School Dist. 1 v. State, supra,* and *Snohomish County Bd. of Equalization v. Department of Revenue, supra,* not concerned with the fundamental rights requirement of standing to seek constitutional certiorari, are inapplicable here. The Superior Courts were correct in ruling that the appellants had not met the fundamental rights requirement for standing to seek a writ of certiorari under the court's constitutional power of review.

Even if a fundamental right were at stake here, the appellants' affidavits to the trial court were still insufficient to invoke the court's constitutional power of review; the affidavits failed to allege facts that, if true, would constitute illegal or arbitrary and capricious action by the BTA. *See State ex rel. Hood v. State Personnel Bd.,* 82 Wn.2d 396, 511 P.2d 52 (1973); *State ex rel. Shannon v. Sponburgh,* 66 Wn.2d 135, 401 P.2d 635 (1965).

 The BTA decisions were not arbitrary and capricious. Arbitrary and capricious means "willful and unreasoning action, without consideration and in disregard of facts or circumstances." *State ex rel. Hood v. State Personnel Bd., supra* at 402; *see State ex rel. Shannon v. Sponburgh, supra.* "Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous." *Abbenhaus v. Yakima,* 89 Wn.2d 855, 858–59, 576 P.2d 888 (1978). The written decisions of the BTA

in these cases show careful deliberation and could not be said to be arbitrary and capricious.

■ "Illegality" is a more nebulous term. Appellants use the term synonymously with "error of law." However, *State ex rel. Cosmopolis Consol. School Dist. 99 v. Bruno*, 59 Wn.2d 366, 369, 367 P.2d 995 (1962), said:

> We are not here solely concerned with whether the function performed was administrative or judicial, but, also, with whether the function was legally performed. The legality of the act of the officials is subject to review, as well as their alleged arbitrary and capricious conduct.

The *Cosmopolis* case makes clear that "illegality" in this context refers to the authority of an agency to perform an act.

In *Leschi Improvement Council v. State Highway Comm'n*, 84 Wn.2d 271, 525 P.2d 774 (1974), the court stated at page 279: "An illegal act, in the context of administrative agency action, is an act which is contrary to statutory authority." The *Leschi* court found that the petitioner's allegation that an agency had proceeded without a statutorily required environmental impact statement constituted a sufficient allegation of an illegal act to invoke the court's constitutional review power. In *State ex rel. Hood v. State Personnel Bd., supra*, the court stated at page 403 that an error of law by the personnel board was "not to be equated with an illegal act". The court in *Port Townsend School Dist. 50 v. Brouillet*, 21 Wn. App. 646, 587 P.2d 555 (1978), equated the illegal act requirement with a requirement that the agency has acted outside the scope of its statutory authority.

We are convinced that the "illegal act" requirement does not empower a court under its constitutional review power to review alleged errors of law committed by an administrative agency.[2] The review, rather, is restricted to an examination of whether the agency has acted within its

---

[2]This conclusion accords with the traditional common law rule regarding scope of review under a writ of certiorari. *See* Larson, *Administrative Determinations and the Extraordinary Writs in the State of Washington*, 20 Wash. L.

authority as defined by the constitution, statutes, and regulations. The powers of the Board of Tax Appeals are set out in RCW 82.03. RCW 82.03.130 grants the BTA jurisdiction to decide appeals from a county board of equalization pursuant to RCW 84.08.130. The appellants have not alleged that the BTA exceeded this grant of jurisdiction in hearing these appeals or in any other way violated its statutory authority. Their claim of illegality rested solely on the BTA's alleged errors of law. This is insufficient to invoke the court's constitutional power of review.

The orders denying review are affirmed.

DURHAM, J., concurs.

RINGOLD, A.C.J., concurs in the result.

Rev. 22, 30–31 (1945). By contrast, a reviewing court acting pursuant to a statutory writ of certiorari is specifically empowered to determine whether "any rule of law" has been violated. RCW 7.16.120(3). Appellants cite *State v. Whitney,* 69 Wn.2d 256, 418 P.2d 143 (1966). In *Whitney,* a writ of certiorari was granted to the State to review a ruling made by a trial judge during a criminal trial. The court granted the writ under its constitutional power of review to review "a patently erroneous construction of a statute". *State v. Whitney, supra* at 261. This case is not authority for appellants' contention that a superior court may review the actions of administrative agencies for errors of law under its constitutional power of review.