[No. 38591-7-I.   Division One.   September 2, 1997.]

SAN JUAN FIDALGO HOLDING COMPANY, *Appellant*, v. SKAGIT COUNTY, ET AL., *Respondents.*

704

*William R. Hickman, Michael P. Monroe,* and *Reed Mc-Clure,* for appellant.

*David R. Needy, Prosecuting Attorney,* and *John R. Moffat, Deputy;* and *Peter J. Eglick* and *Helsell, Fetterman, L.L.P.,* for respondents.

KENNEDY, A.C.J. — San Juan Fidalgo Holding Company delivered its land use petition to the Skagit County Auditor's Office approximately 20 minutes after the office had closed on the last day of the 21-day service period for commencing land use appeals under the Land Use Petition Act, ch. 36.70C RCW. Efforts to locate the county auditor for purposes of service before midnight were unsuccessful. We affirm the trial court's dismissal of the petition and award attorney fees on appeal to the respondents. "Normal office hours" under RCW 4.28.080(1) are the hours that an auditor's office is open to the public, not the hours that any employee might be working in the of-

fice outside those hours. Leaving a land use petition with a deputy auditor after normal office hours on the last possible day for service does not constitute actual or substantial compliance with the statutory time limit for filing land use appeals. Inability to locate the county auditor for service before the hour of midnight on the last possible day for service does not require the court to issue a constitutional writ to reinstate an untimely appeal.

## FACTS

San Juan Fidalgo Holding Company (Fidalgo) owns 11 acres of land on Fidalgo Island in Skagit County. Desiring to build a residential development on the land, Fidalgo set about gaining final plat approval for the project. Following a hearing on Fidalgo's plat application, a Skagit County hearing examiner recommended that the County approve the plat with certain modifications.

The recommendation was appealed by Carol Ehlers and the Friends of Sensible Drainage (Friends), who own property downhill of the proposed development and who contended that the type and position of the drainage system built by Fidalgo increased the risk of landslides on their property. The Skagit County Board of Commissioners granted Ehlers' and the Friends' appeal and in October of 1995 voted to remand the matter for redesign of the drainage system. On November 7, 1995, the Board signed Resolution No. 15940, formally remanding the request for final plat approval to the hearing examiner and directing the examiner to consider the request only after Fidalgo submitted a revised plan curing the drainage problems.

In response, Fidalgo timely filed a summons and land use petition and complaint in Whatcom County Superior Court seeking reversal of the Board's decision and naming Skagit County, Ehlers and Friends as defendants. Fidalgo retained process server Jason Burnett to serve Skagit County with the summons and complaint by filing the documents with the Skagit County Auditor's Office, as well as to serve Ehlers and Friends.

On November 28, 1995, which the parties agree was the latest possible day of the 21-day filing period, Burnett first drove to Anacortes to serve the other defendants and then drove to the Skagit County Courthouse. Arriving between 4:35 and 4:45 p.m., he found that the courthouse had closed for the day and that the building was locked. Burnett contacted a building custodian, who let him inside and directed him to the auditor's office. The posted hours for the auditor's office were from 8:30 a.m. until 4:30 p.m. Burnett reached the auditor's office at approximately 4:50 p.m. Several employees, including Chief Deputy Auditor Carol Brown, were still inside. The record reflects that Ms. Brown regularly works past the hours that the auditor's office is open to the public for the transaction of business. When Burnett told Brown that he needed to file documents, Brown refused to accept them and advised him to come back the next day between 8:30 a.m. and 4:30 p.m. After telephoning his supervisor, Burnett placed the documents on the office floor and left. Brown picked up the papers and clocked them in at 5:06 p.m.

At the direction of his supervisor, Burnett returned to the auditor's office approximately 15 minutes later and asked for the documents back. Brown refused to return the papers. When Burnett asked for the county auditor's home address and phone number, Brown refused to give him the information and advised him to contact the auditor the next day during business hours. Fidalgo's attorneys and agents attempted throughout the evening to locate the auditor's home address in order to personally serve her with the documents before midnight, but were unable to do so, in that her home telephone number was unlisted; consequently, none of the normal means of finding the auditor's home address were available.

The County, joined by Ehlers and Friends, moved to dismiss the petition for lack of jurisdiction based upon Fidalgo's failure to serve the County within 21 days of the land use decision as required by RCW 36.70C.040(3) and RCW 4.28.080. The trial court granted the motion and

dismissed the petition, concluding that Fidalgo had neither technically nor substantially complied with the Land Use Act's notice provisions. The court also denied Fidalgo's request to review the denial of its petition under the court's inherent and constitutional powers.

Fidalgo appeals.

## DISCUSSION

### I

To commence review of a land use decision under the Land Use Petition Act, Ch. 36.70C RCW, a petitioner must "timely serve" the petition on (among others) the local jurisdiction within 21 days of the issuance of the decision. *See* RCW 36.70C.040(2)-(3). The last possible date the land use decision in this case could have been considered "issued" was November 7, 1995; accordingly, the latest possible day for timely service under the Act was November 28, 1995.[1]

The method of service on local jurisdictions, including counties, is governed by RCW 4.28.080. *See* RCW 36.70C-.040(5). RCW 4.28.080(1) provides that a summons is "served" on a county when a copy is delivered "to the county auditor or, during the normal office hours, to the deputy auditor." RCW 4.28.080(1). Thus, under the statute, while a county auditor may be served at any time, service on a deputy officer may be made only within "normal office hours."

The Legislature has directed local boards of commissioners to set the hours in which county offices will be "kept open for the transaction of business." RCW 36.16.100. In Skagit County, those hours are from 8:30 a.m. until 4:30 p.m., weekdays. SKAGIT COUNTY CODE 2.04.030.

---

[1] It is unnecessary to the resolution of this appeal for us to consider whether the decision may have been issued at the time the Board voted, in October 1995. For purposes of this appeal, we assume without holding that the land use decision was issued on November 7, 1995, when the resolution was signed.

It is undisputed that Fidalgo never personally served the Skagit County Auditor and did not serve its petition during the hours posted for the auditor's office within the 21-day service period. Fidalgo contends that the trial court's ruling that Fidalgo therefore failed to serve the County within "normal office hours" was error, arguing that "normal office hours" are the hours that any deputy auditor is normally at the auditor's office, not merely the hours that the office is open to the public. The trial court ruled that the word "normal" in combination with the words "office hours" indicates that the phrase means the hours when the office is open for business to the public, and not the additional hours during which work may normally be conducted.

The phrase "normal office hours" is not defined by statute, and as such, should be given its plain and ordinary meaning. *Louisiana-Pacific Co. v. Asarco, Inc.*, 131 Wn.2d 587, 600, 934 P.2d 685 (1997). Although the parties have not offered any dictionary definitions of the phrase "normal office hours", "office hours" is defined to be the "portion of the day during which offices are usually open for the transaction of business" by BLACK'S LAW DICTIONARY 1083 (6TH ED. 1990). None of the standard dictionary definitions offered by the parties is appreciably different.[2]

We reject Fidalgo's contention that the trial court's construction of the phrase "normal office hours" was too narrow and conflicts with the status of deputy auditors as agents of the county auditor. Fidalgo argues that because the deputies' status as agents of the county auditor does not depend on whether the auditor's office is open or closed, delivery of documents to a deputy auditor after normal office hours is tantamount to personal service upon the county auditor herself, which under the statute may properly be made until midnight on the last possible day for timely service. But the notice statute, in prescribing

---

[2]*E.g.*, "office hours" are "the hours set for business, work, or professional service in an office." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1567 (1969).

the method for properly serving a county, does not speak in terms of the *agency* of the person served; instead it speaks in terms of the *hours* in which service upon a deputy auditor may properly be made. Accordingly, contrary to Fidalgo's contention, by limiting the time for proper service on deputy auditors to "normal office hours" the Legislature determined that, at least as far as timely service on a county is concerned, a deputy auditor's status as an agent does in fact depend on whether the office is open or closed for business transactions with the public.

The Legislature specifically included the phrase "normal office hours" when it amended the statute in 1987. *See* LAWS OF 1987, ch. 361. The intent of the amendment was to liberalize service on counties by allowing service on county officials' agents in addition to the officials themselves.[3] By amending the statute, the Legislature also standardized service on counties by restricting service on deputy auditors to normal office hours. Fidalgo's proposed construction of the statutory language would thwart the clear intent of the statutory language, and we decline to adopt it. The purpose of standardized service requirements would not be served by allowing timely service to depend upon the ability of a particular process server to find a courthouse custodian who is willing to admit the process server into a locked courthouse after normal business hours. *Cf. State ex rel. Uhlman v. Melton*, 66 Wn.2d 157, 162, 401 P.2d 631 (1965) (affirming the dismissal as untimely filed of referendum petitions filed on a Saturday, outside posted office hours).

Fidalgo also contends that the trial court's holding effectively limits service on the County to an eight-hour period

---

[3]At a Senate Judiciary Committee Hearing on the proposed amendments to the statute, proponents of the amendments from the Washington State Process Servers Association explained that the amendments were designed to fix the problem, under the prior statute, of difficulty in timely serving counties because of the frequent unavailability of the only named individuals allowable for service — county officials — due to illness, business travel, vacation, or part-time schedules. Hearing on H.B. 1199 Before the Senate Judiciary Comm., 50th Leg., Reg. Sess. (Mar. 23, 1987, tape recording) (tapes may be found at the Washington State Archives).

during the weekday from 8:30 a.m. to 4:30 p.m. Apart from the fact that Fidalgo indisputably could have personally served the county auditor at any time during the 21-day period but waited until the last day and was then unable to do so, this statement is true, but is not a basis for reversal, because that was the result the Legislature intended. The trial court correctly held that by failing to comply with the time periods as set out in the statute, Fidalgo failed to comply with the deadline for service on the County.

## II

Fidalgo contends that even if it did not technically comply with the timely service requirement, it substantially complied by leaving the documents with a deputy auditor before the midnight deadline for serving the county auditor. "Substantial compliance is actual compliance in respect to the substance essential to every reasonable objective of a statute. In the cases where substantial compliance has been found, there has been actual compliance with the statute, albeit procedurally faulty." *Union Bay Preservation Coalition v. Cosmos Dev. & Admin. Corp.*, 127 Wn.2d 614, 620, 902 P.2d 1247 (1995) (citations and internal quotation marks omitted). The doctrine of substantial compliance is applied by courts in cases involving service of both original process and appellate process. *Id.*

In order for the doctrine of substantial compliance to apply, there must have been some *actual* compliance with the relevant statute, because substantial compliance is "actual compliance" with the "substance" of a statutory requirement. *City of Seattle v. Public Employment Relations Commission (PERC)*, 116 Wn.2d 923, 928, 809 P.2d 1377 (1991); *see also Petta v. Department of Labor & Indus.*, 68 Wn. App. 406, 409-10, 842 P.2d 1006 (1992) ("Noncompliance with a statutory mandate is not substantial compliance") (citation omitted). The substance of the statutory requirement at issue in this case is timely service. The *PERC* court ruled that the doctrine of substantial

compliance does not apply to statutorily established time limits for accomplishing acts:

> It is impossible to substantially comply with a statutory time limit . . . It is either complied with or it is not. Service after the time limit cannot be considered to have been actual service within the time limit. *We therefore hold that failure to comply with a statutorily set time limitation cannot be considered substantial compliance with that statute.*

*PERC,* 116 Wn.2d at 928-29 (emphasis ours). In *PERC,* the Supreme Court upheld the dismissal of an appeal from an administrative decision for the appealing party's failure to serve all of the respondents within the 30-day time limit. *Id.* The salient facts in this case are indistinguishable from those in *PERC.* Here, Fidalgo did not comply with the timely service requirement because it failed to serve its documents within normal office hours. This is not a case, as Fidalgo contends, in which an appeal was timely undertaken but technically misdirected; the only "misdirection" was Fidalgo's ill-fated choice of waiting until the last day of the filing period to attempt service of process. Under these circumstances, as in *PERC,* the doctrine of substantial compliance does not pertain.

None of the cases relied on by Fidalgo diminishes the holding in *PERC* because those cases did not deal with the issue of whether service after a statutory time limit was "timely," as the *PERC* case did. In *Black, Hall* and *Saltis,* there was no question about untimely service; the issue in those cases was whether the appellants had served the correct parties. *See Black v. Department of Labor & Indus.,* 131 Wn.2d 547, 551, 933 P.2d 1025 (1997); *Hall v. Seattle Sch. Dist. 1,* 66 Wn. App. 308, 313, 831 P.2d 1128 (1992); *In re Saltis,* 94 Wn.2d 889, 895-96, 621 P.2d 716 (1980). Similarly, in *Continental Sports Corp. v. Department of Labor & Indus.,* 128 Wn.2d 594, 603, 910 P.2d 1284 (1996), the issue was not timeliness but whether the *method* of service substantially complied with the statute. Fidalgo's attempt to liken the circumstances of this case with *Hall* is not persuasive. Unlike *Hall,* where the person

designated to accept process was frequently away from the office, Fidalgo has presented no evidence that deputy auditors were ever unavailable during normal office hours to accept its land use petition.

Fidalgo correctly contends that the preference of modern courts, in the absence of serious prejudice, is to allow appeals to proceed. *See Black*, 131 Wn.2d at 552. We recognize that the practical difference between a petition (timely) served slightly before 4:30 p.m. and a petition (untimely) served at 5:06 p.m. is negligible, inasmuch as both result in the County's obtaining the petition within the same hour, and that the prejudice to Fidalgo caused by the dismissal of its appeal is considerable. However, recognizing an exception to the requirement that service be made on deputy auditors within "normal office hours" in this case would be to create an exception that would render the rule a nullity. As was stated by the Seventh Circuit in *Hilker & Bletsch Co. v. United States*, 210 F.2d 847, 850 (7th Cir. 1954):

> Plaintiff's theory that its attempt to file its claim at 4:35 p.m., when it found the office of the district supervisor closed, should be construed as a constructive filing on that date . . . is not tenable. If an attempt to file five minutes late can be construed as timely, we see no reason why an attempt to file five hours late or in fact at any time before midnight should not be similarly construed. There would be no difference in the legal principle presented but obviously such a holding would border on the absurd.

The trial court did not err in holding that Fidalgo failed to substantially comply with RCW 36.70C.040.

### III

In its opposition to the respondents' motion to dismiss, Fidalgo requested that the trial court review the denial of its petition under the court's inherent and constitutional powers (constitutional or common-law certiorari). The trial court declined to do so. Fidalgo contends that this was an abuse of discretion.

The constitutional writ of certiorari is one of three possible avenues for obtaining judicial review of an administrative agency decision in a land use case. *Bridle Trails Community Club v. City of Bellevue*, 45 Wn. App. 248, 253, 724 P.2d 1110 (1986). The writ is an "extraordinary remedy reserved for extraordinary situations," *King County v. Board of Tax Appeals*, 28 Wn. App. 230, 237, 622 P.2d 898 (1981), and is rarely granted where a direct appeal is available unless the appellant can show good cause for not using that method. *Birch Bay Sales, Inc. v. Whatcom County*, 65 Wn. App. 739, 745-46, 829 P.2d 1109 (1992). A trial court's decision not to issue a constitutional writ is discretionary and will be reversed only for an abuse of that discretion. *Concerned Organized Women & People Opposed to Offensive Proposals, Inc. v. City of Arlington*, 69 Wn. App. 209, 221, 847 P.2d 963 (1993).

Because a direct appeal was always available to Fidalgo and became unavailable only as a result of Fidalgo's own decision to delay service until the last possible day, there was no "good cause" for the issuance of a writ of certiorari. Accordingly, the trial court acted within its discretion in denying Fidalgo's request to review its land use petition under a constitutional writ of certiorari.

## IV

Respondents request attorney fees and costs under RCW 4.84.370 and RAP 14.2. RCW 4.84.370 provides, in pertinent part:

> (1) . . . [R]easonable attorneys' fees and costs shall be awarded to the prevailing party . . . on appeal before the court of appeals . . . of a decision by a county . . . to . . . deny a development permit involving a . . . plat, . . . if:
>
> (a) The prevailing party on appeal was the prevailing . . . party before the county[;] . . . and
>
> (b) The prevailing party on appeal was the prevailing party . . . in all prior judicial proceedings.

Because the respondents were the prevailing parties at all

levels below, and are the prevailing party on appeal, they are entitled to reasonable attorney fees and costs under this statute and RAP 14.2.

Affirmed.

COLEMAN and BECKER, JJ., concur.

Review denied at 135 Wn.2d 1008 (1998).