[No. 19103-6-III. Division Three. January 23, 2001.]

KLICKITAT COUNTY, ET AL., *Respondents*, v. MICHAEL H. BECK, *as Arbitrator*, ET AL., *Appellants*.

454

*Kenneth J. Pedersen* (of *Davies, Roberts & Reid*), for appellants.

*David A. Elofson* and *Anthony F. Menke* (of *Menke & Jackson*), for respondents.

BROWN, A.C.J. — The Klickitat County Sheriff fired Deputy Steve R. Shields. An arbitrator selected under the collective bargaining agreement (CBA), Michael H. Beck, decided the sheriff lacked just cause to terminate Deputy Shields. The superior court granted a constitutional writ and vacated the arbitration award. Arbitrator Beck, General Teamsters Local No. 524, and Deputy Shields appeal, arguing the court erred by granting certiorari and vacating the arbitrator's award. We decide the writ was proper, but vacating the award was improper. Accordingly, we reverse and reinstate the arbitration award.

## FACTS

Deputy Shields was employed with the Klickitat County Sheriff Department. He rose to the probationary rank of sergeant. Deputy Shields became controversial, mainly due

to his involvement in two shooting incidents.

First, in December 1993, Deputy Shields shot and wounded Lloyd Cook, who threatened fellow deputy Karen A. von Borstel with a firearm. An independent Use of Force Review Board determined the shooting was justified. Second, in May 1994, Deputy Shields shot and killed Denny Allen during an alleged attack following a traffic stop. A coroner's inquest determined the shooting was justified. In December 1994, just before leaving office, Sheriff Jim Gleason asked an independent Use of Force Review Board to make recommendations about the Allen shooting to the Goldendale Police Chief. The chief would decide whether the shooting was justified.

In January 1995, Deputy von Borstel became Sheriff. Deputy Shields supported Deputy von Borstel's election. This support apparently motivated Sheriff Gleason to demote Deputy Shields. In February 1995, without interviewing Deputy Shields, the Review Board decided Deputy Shields violated department policies in the Allen shooting and recommended his termination. In July 1995, after considering the recommendations and interviewing Deputy Shields, the chief decided the shooting was justified.

On July 31, 1995, Sheriff von Borstel asked psychologist Howard L. Deitch, Ph.D., to conduct a fitness evaluation of Deputy Shields. In her letter to Dr. Deitch, Sheriff von Borstel summarized Deputy Shields' "very stressful, and complicated recent history." Deputy Shields did not contest the sheriff's decision. In August 1995, Dr. Deitch reported that Deputy Shields was unfit for duty.

In October 1995, Sheriff von Borstel wrote Deputy Shields telling him of her intent to call a meeting to discuss Dr. Deitch's report and explore resignation. In response, Deputy Shields had psychologist David H. Smith, Ph.D., evaluate him and Dr. Deitch's report. Dr. Smith has extensive experience evaluating law enforcement officers, as compared to Dr. Deitch. On June 6, 1996, Dr. Smith issued a report highly critical of Dr. Deitch's evaluation and concluding that Deputy Shields was fit for duty.

After a "fitness for duty meeting," Sheriff von Borstel terminated Deputy Shields effective June 19, 1996. In the termination letter, Sheriff von Borstel noted that although Dr. Deitch and Dr. Smith's evaluations reached different conclusions, even the Smith evaluation indicated a "lack [of] interpersonal skills that are needed to be a deputy sheriff." Deputy Shields immediately filed a grievance through Teamster's Local No. 524. After Sheriff von Borstel denied the grievance, the union asked for arbitration pursuant to the CBA. Arbitrator Beck was given a stipulated issue: "Whether the Employer had just cause to terminate the Grievant Steven Shields for alleged unfitness for duty, and if not, what is the appropriate remedy?"

In November 1998, after a six-day hearing, the arbitrator issued a lengthy written opinion concluding that the County and Department (collectively Klickitat) did not have just cause to terminate Deputy Shields for unfitness. Among other things, the arbitrator decided Sheriff von Borstel lacked a substantial basis for ordering Deputy Shields to undergo a psychological fitness examination. The arbitrator ordered Klickitat to reinstate Deputy Shields and pay him lost earnings and benefits.

In December 1998, Klickitat petitioned the Klickitat County Superior Court for a writ of certiorari/review pursuant to article IV, section 6 of the Washington State Constitution, or, alternatively, a writ of certiorari/review pursuant to RCW 7.16.040. In April 1999, the superior court issued a memorandum opinion order granting the constitutional writ but denying the statutory writ. The trial court issued a consistent written order in June 1999, which Klickitat did not appeal.

On January 6, 2000, the trial court filed a memorandum opinion vacating the arbitrator's award and reinstating the termination. The trial court reasoned the arbitrator's decision was illegal because Deputy Shields had not initially filed a grievance when Dr. Deitch's fitness evaluation was requested. The court opined it was improper for the arbitrator to consider the appropriateness of the fitness evalu-

ation because the initial failure to file a grievance rendered the issue "null and void" under the CBA. Deputy Shields then filed this appeal.

## ISSUES

Did the trial court err by: (A) granting a writ of constitutional certiorari, and (B) vacating the arbitrator's decision on the basis of illegality?

## ANALYSIS

### A. Constitutional Writ

 A grant of certiorari "concerns the trial court's jurisdiction." *State ex rel. Gunning v. Odell*, 58 Wn.2d 275, 277, 362 P.2d 254 (1961) (citing *Seattle Nat'l Bank v. Trefethen*, 168 Wash. 173, 11 P.2d 244 (1932)); *see also Clark County Pub. Util. Dist. No. 1 v. Wilkinson*, 139 Wn.2d 840, 845-46, 991 P.2d 1161 (2000) (discussing trial court's authority to issue writ). A party may raise a trial court's lack of jurisdiction for the first time on appeal. RAP 2.5(a)(1); *Leavitt v. Jefferson County*, 74 Wn. App. 668, 673, 875 P.2d 681 (1994). "Thus, RAP 2.5(a) does not preclude our review of the propriety of certiorari; rather it mandates review." *Leavitt*, 74 Wn. App. at 674.

 "Under article IV, section 6 (amendment 87) [of the Washington Constitution], a superior court possesses the power to review arbitrary decisions by issuing constitutional writs of certiorari." *Wilkinson*, 139 Wn.2d at 845 (citing *Saldin Sec., Inc. v. Snohomish County*, 134 Wn.2d 288, 292, 949 P.2d 370 (1998)). "The purpose of such a writ is 'to enable a court of review to determine whether the proceedings below were within the lower tribunal's jurisdiction and authority.'" *Wilkinson*, 139 Wn.2d at 845-46 (quoting *Saldin Sec.*, 134 Wn.2d at 292). "Thus, a court will accept review only if the petitioner can allege facts that, if verified, establish the lower tribunal's decision was arbitrary and capricious or illegal." *Wilkinson*, 139 Wn.2d at

846 (citing *Saldin Sec.*, 134 Wn.2d at 294).

Illegality in this context refers to the arbitrator's jurisdiction and authority. *See Wash. Pub. Employees Ass'n v. Wash. Pers. Res. Bd.*, 91 Wn. App. 640, 657, 959 P.2d 143 (1998). "Thus, an alleged error of law is insufficient to invoke the court's constitutional power of review." *Wash. Pub. Employees Ass'n*, 91 Wn. App. at 658 (citing *King County v. State Bd. of Tax Appeals*, 28 Wn. App. 230, 242-43, 622 P.2d 898 (1981); *Pierce County Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 694, 658 P.2d 648 (1983)). "Arbitrary and capricious action is 'willful and unreasoning action, without consideration and in disregard of facts and circumstances[;] [w]here where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached.'" *Dep't of Agric. v. State Pers. Bd.*, 65 Wn. App. 508, 513-14, 828 P.2d 1145 (1992) (quoting *Pierce County Sheriff*, 98 Wn.2d at 695) (alterations in original).

■ The trial court's decision whether to grant a constitutional writ of certiorari is discretionary. *Wilkinson*, 139 Wn.2d at 846. If the superior court refuses to grant a writ, it must have tenable reasons for doing so. *Wash. Pub. Employees Ass'n*, 91 Wn. App. at 658; *Bridle Trails Cmty. Club v. City of Bellevue*, 45 Wn. App. 248, 252, 724 P.2d 1110 (1986).

■ *Wilkinson* is factually similar to this appeal. There, a private arbitrator resolved a public labor dispute pursuant to the CBA between the employer and the union. *Wilkinson*, 139 Wn.2d at 842-43. The superior court granted a constitutional writ of certiorari and vacated the arbitrator's award, reasoning the arbitrator had acted beyond her authority. *Id.* at 843-44.

With regard to the remedy of certiorari, the *Wilkinson* court stated:

> In the present case, review by certiorari is appropriate initially because there is no statutory mechanism for judicial review of public employment labor arbitrations. Although RCW

41.56.122(2) provides for binding arbitration in public employee labor disputes, it does not provide for judicial review of such decisions. In addition, chapter 49.08 RCW, which governs general labor disputes, does not apply to public employment arbitrations. RCW 41.56.125. Furthermore, RCW 7.04.010, Washington's general arbitration statute, does not apply to agreements between employers and employees unless specifically provided in the labor agreement. *See Grays Harbor County*, [*v. Williamson*, 96 Wn.2d 147, 152, 634 P.2d 296 (1981)]. The CBA here did not incorporate chapter 7.04 RCW by reference.

*Wilkinson*, 139 Wn.2d at 846.

Although the above passage is dictum, we decide it is persuasive. The CBA here did not provide for judicial review, nor did it incorporate chapter 7.04 RCW by reference. *Wilkinson*, 139 Wn.2d at 846. Moreover, the County's petition for the writ of certiorari and the accompanying affidavit of Sheriff von Borstel clearly allege the arbitrator exceeded his jurisdiction and thus acted illegally. *See Wash. Pub. Employees Ass'n*, 91 Wn. App. at 657. We conclude that a constitutional writ of certiorari was the appropriate mechanism for seeking judicial review. *Wilkinson*, 139 Wn.2d at 846-47.

## B. Arbitration Award

■■ Our review is de novo based on the record before the arbitrator. *See Leavitt*, 74 Wn. App. at 677. Deputy Shields argues the award is enforceable so long as it falls within the scope of the CBA. The County argues the award can be vacated for illegality or arbitrary and capricious action. Although both arguments have merit, we give exceptional deference to an arbitrator's decision, particularly in the realm of labor relations. *Dep't of Agric.*, 65 Wn. App. at 515. On the other hand, Washington case law clearly provides that a court reviewing an arbitration award under a constitutional writ of certiorari determines whether the arbitrator acted illegally or in an arbitrary and capricious manner. *Wilkinson*, 139 Wn.2d at 846; *Saldin Sec.*, 134

Wn.2d at 294; *Dep't of Agric.*, 65 Wn. App. at 515.

The two approaches may be harmonized. In the certiorari context, the reviewing court applies the illegal or arbitrary and capricious standard. *Wilkinson*, 139 Wn.2d at 846; *Saldin Sec.*, 134 Wn.2d at 294. But to guide the court, the arbitrator's decision is given deference. *See Dep't of Agric.*, 65 Wn. App. at 515 (acknowledging deference to arbitration awards while reviewing award under arbitrary and capricious standard). Thus, determining if the arbitrator acted within the scope of his authority aids us in determining whether the arbitrator acted illegally or arbitrarily and capriciously.

To determine if the arbitrator acted within the scope of his authority, the reviewing court considers the arbitrator's decision in light of the relevant CBA. *See Dep't of Agric.*, 65 Wn. App. at 515-16. Here, Article 16 of the CBA sets out a three-step grievance procedure. Step 1 involves an informal procedure undertaken within three days of the triggering event. If the first step does not resolve the matter, the employee may initiate the second step by filing a written grievance with the sheriff for a final decision. Step 3 entails arbitration on the issue(s) raised at Step 2.

Regarding the arbitrable issue(s), the CBA states "[t]he the arbitrator shall consider and decide only the question or issue(s) raised at Step 2 and said arbitrator shall not have the authority to consider additions, variations and/or subsequent grievances beyond the grievance submitted at Step 2." CBA, Art. 16.2, Step 3(C)(iii).

The triggering event here is Sheriff von Borstel's June 19, 1996, termination letter, not her earlier decision to have Deputy Shields submit to a fitness for duty evaluation. On June 20, the union representative gave formal written notice protesting the discharge and selecting the grievance procedure. The letter suggested initiating the grievance procedure at Step 2 and then stated: "Please advise me if you have any procedural questions or objections." On June 24, in response, Sheriff von Borstel denied the grievance and further replied: "I believe step 3 [arbitration] is the

more appropriate step at this time." On June 28, the union duly gave notice of advancing to Step 3. Eventually, the parties agreed the arbitrator would resolve the following grievance issues: "Whether the Employer had just cause to terminate the Grievant Steven Shields for alleged unfitness for duty, and if not, what is the appropriate remedy?"

Given the just described events, the fitness evaluation is clearly a necessary part of the just cause determination. Moreover, no objection to any step in the arbitration process is noted. Indeed, the sheriff suggested going straight to Step 3. Thus, Klickitat incorrectly contended, and the superior court improperly agreed, that the arbitrator had no legal authority to consider the matter.

Nevertheless, the arbitrability of public sector labor-management disputes in Washington is generally governed by rules articulated by the United States Supreme Court in the "Steelworkers' Trilogy." *Peninsula Sch. Dist. No. 401 v. Pub. Sch. Employees*, 130 Wn.2d 401, 413, 924 P.2d 13 (1996) (citing *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 80 S. Ct. 1343, 80 S. Ct. 1363, 4 L. Ed. 2d 1403 4 L. Ed. 2d 1432 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S. Ct. 1347, 80 S. Ct. 1363, 4 L. Ed. 2d 1409, 4 L. Ed. 2d 1432 (1960); *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 80 S. Ct. 1358, 80 S. Ct. 1363, 4 L. Ed. 2d 1424, 4 L. Ed. 2d 1432 (1960)). In Washington the rules are framed as:

"(1) Although it is the court's duty to determine whether the parties have agreed to arbitrate a particular dispute, the court cannot decide the merits of the controversy, but may determine only whether the grievant has made a claim which on its face is governed by the contract. (2) An order to arbitrate should not be denied unless it may be said with positive assurance the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. (3) There is a strong presumption in favor of arbitrability; all questions upon which the parties disagree are presumed to be within the arbitration provisions unless negated expressly or by clear implication."

*Peninsula Sch. Dist. No. 401*, 130 Wn.2d at 413-14 (quoting *Council of County & City Employees v. Spokane County*, 32 Wn. App. 422, 424-25, 647 P.2d 1058 (1982)). "Thus, apart from matters that the parties specifically exclude, the questions on which they disagree must come within the scope of the grievance and arbitration provisions of the collective bargaining agreement." *Peninsula Sch. Dist. No. 401*, 130 Wn.2d at 414 (citing *Meat Cutters Local No. 494 v. Rosauer's Super Mkts., Inc.*, 29 Wn. App. 150, 154, 627 P.2d 1330 (1981)).

Neither the CBA nor the stipulated issue statement specifically prevented the arbitrator from considering Sheriff von Borstel's basis for subjecting Deputy Shields to a fitness evaluation. And, our record indicates the County was quite eager to produce evidence justifying the sheriff's decision to go ahead with the evaluation; the County had Sheriff von Borstel testify at some length as to her reasons for seeking the evaluation.

Given the broad language of the agreed issue statement, the type of documentary evidence and testimony adduced at the arbitration hearing, and the strong presumption in favor of arbitrability, the arbitrator here did not exceed his authority. The decision to have Deputy Shields undergo the fitness evaluation cannot be separated from the ultimate decision to fire him. In other words, the parties invited the arbitrator to consider the appropriateness of the fitness evaluation. *See Dep't of Agric. v. Pers. Bd.*, 65 Wn. App. 508, 516, 828 P.2d 1145 (1992). Consequently, the County's argument that the arbitrator acted illegally is unpersuasive.

Moreover, the record supports the arbitrator's observation that Sheriff von Borstel probably would have fired Deputy Shields regardless of the outcome of Dr. Deitch's evaluation. The arbitrator suggested the fitness evaluation was merely pretextual. Based upon the evidence in the record before the arbitrator, especially considering Dr.

Smith's superior qualifications and the final determinations that the two shootings were justified, we cannot say the arbitrator acted arbitrarily when deciding the County lacked just cause to terminate Deputy Shields.

In sum, because the arbitrator's decision properly fell within his authority to determine the stipulated "just cause" issue, it cannot be challenged on the basis of illegality. *Saldin Sec., Inc. v. Snohomish County*, 134 Wn.2d 288, 292, 949 P.2d 370 (1998); *Wash. Pub. Employees Ass'n v. Wash. Pers. Res. Bd.*, 91 Wn. App. 640, 657, 959 P.2d 143 (1998). And because the arbitrator here did not act in disregard of the evidence before him, and reasonable minds can differ as to the basis for Deputy Shields' termination, the arbitration decision cannot be said to be arbitrary and capricious. *Saldin Sec.*, 134 Wn.2d at 297; *Wash. Pub. Employees Ass'n*, 91 Wn. App. at 658; *Dep't of Agric.*, 65 Wn. App. at 516.

## CONCLUSION

The trial court did not err in considering this matter on a constitutional writ, but did err when vacating the arbitration award.

Accordingly, we reverse and reinstate the arbitration award.

SWEENEY and KATO, JJ., concur.

Review denied at 143 Wn.2d 1024 (2001).